Syllabus.

## THE ILLINOIS MASONS' BENEVOLENT SOCIETY

*v.*

## ELIZABETH BALDWIN.

| 86 | 479 |
|---|---|
| 126 | 403 |

| 86 | 479 |
|---|---|
| 40a | 219 |

| 86 | 479 |
|---|---|
| 86a | 327 |

| 86 | 479 |
|---|---|
| 100a | 4424 |

| 86 | 479 |
|---|---|
| 199 | 5575 |

| 86 | 479 |
|---|---|
| 104a | 4171 |

1. LIFE INSURANCE—*forfeiture by non-payment of assessments.* Where a certificate of membership in a society which provides for paying a certain sum of money on the death of the member also requires the party to pay all assessments against him within ten days after notice thereof, or the certificate shall be null and void, and the by-laws of the society provide that a party failing to pay his assessments within ten days after notice shall forfeit his membership and all benefits therefrom, and the party, in his application for membership, agreed to be bound by the rules and regulations of the society, a failure or neglect to pay an assessment, within ten days after notice of the same, will prevent any recovery upon the certificate upon his death, unless there is shown a waiver of the forfeiture, or facts estopping the society from insisting upon the same.

2. SAME—*waiver of forfeiture.* Where the right of a member of a benevolent society to the payment of money on his death was forfeited by his failure to pay assessments within ten days after notice of the same, and the local agent returned such member's receipts for non-payment, and the secretary sent them back to the local agent for collection, stating that the time of payment could not be extended beyond a certain day, and payment was not made within that time, but, some ten days after, the local agent forwarded the money, he having collected the same by contributions, as an act of kindness for the assured, which money was refused by the society and returned, and given back to the parties advancing the same, it was *held*, that there was no waiver of the forfeiture on the part of the society.

3. ESTOPPEL. When a party in default in the payment of assessments against him, as a member of a benevolent society, has not been induced by the society or its agents to do, or to omit to do, any act which he would not otherwise have done or omitted, the society will not be estopped from insisting upon a forfeiture of his rights for his neglect to pay.

4. CUSTOM—*to change contract.* Proof of a custom is never admitted to overcome or change the express terms of a contract. Proof by a witness that in certain instances known to him a forfeiture was not exacted, without showing this to be uniform and its duration, is not sufficient to show a custom.

5. CROSS-ERROR—*when necessary.* When evidence introduced by a party is sufficient to prove a necessary fact in the case, if competent, on appeal or error by such party, the question of its competency can only arise on cross-errors assigned by the other party on the ground of its improper admission.

APPEAL from the Circuit Court of Woodford County; the Hon. JOHN BURNS, Judge, presiding.

This was an action of debt on the following instrument:

*Class 2.*               *Age 36.*                *No. 456.*

This certificate of membership witnesseth that the Illinois Masons' Benevolent Society, in consideration of the representations made to it in the application of membership and the sum of six dollars to it in hand paid, by Albert G. Baldwin, of Minonk, Illinois, and the sum of ninety-five one-hundredths dollars, to be paid by the said Albert G. Baldwin, within ten days after due notice has been served upon him of the death of a member of this society; the sum of ninety cents to be paid upon the death of each member of the society, so long as the said Albert G. Baldwin shall belong to the first class; and the sum of ninety-five cents upon the death of each member of the society, so long as he shall belong to the second class; and the sum of one dollar and fifteen cents upon the death of each member of the society, so long as he shall belong to the third class; and the sum of one dollar and eighty cents upon the death of each member of the society, so long as he shall belong to the fourth class, do promise and agree to and with the said Albert G. Baldwin, his heirs, executors, administrators, and assigns, well and truly to pay, or cause to be paid, to Elizabeth Baldwin, his wife, or *the legal representatives of the said Albert G. Baldwin,* within thirty days after due notice and satisfactory evidence of the death of the said Albert G. Baldwin, and proof of interest of assignment, or held as security, the sum of seventy cents for every member of the society belonging to the first class (as shown in the margin of the certificate), at the time of the death of said Albert G. Baldwin; and the sum of seventy-five cents for every member of the second class; and the sum of ninety-five cents for every member of the third class; and the sum of one dollar and sixty cents for every member of the fourth class. And it is also understood and agreed, that if the said Albert G. Baldwin shall not pay the assessment herein before named, on or before the time mentioned for the pay-

ment thereof, or in case the said Albert G. Baldwin shall, without the consent of this society, previously obtained in writing, engage in any military or naval service whatever in time of war or rebellion, then this certificate shall be null, void, and of no effect.

In witness whereof the Illinois Masons' Benevolent Society has caused its corporate seal to be hereunto affixed, and these presents to be signed by its president and secretary, at Princeton, this twentieth day of May, 1872.

Illinois Masons'

SEAL.

Benevolent Association.

U. S. Internal

Five   5   Cents.

Revenue.

[Signed]    GEORGE CROSSLEY,
*President.*

L. R. JEROME,
*Secretary.*

| CLASSES. | ASSESSMENT TO BE MADE UPON THE DEATH OF A MEMBER. |
|---|---|
| 1st Class, those from 21 to 30 years of age. | 1st Class.................................$ .90 |
| 2d Class, those from 31 to 40 years of age. | 2d Class................................... .95 |
| 3d Class, those from 41 to 50 years of age. | 3d Class................................... 1.15 |
| 4th Class, those from 51 to 60 years of age. | 4th Class................................... 1.80 |

Proof was made that Albert G. Baldwin died December 6, 1874, and that there were then members of the society issuing the certificate as follows: first class, 568; second class, 1,877; third class, 1,677; and fourth class, 636.

Defense was interposed, by proper pleas, that Baldwin had failed to make payment of various assessments made upon him on account of the deaths of members of the society, and that he thereby ceased to be a member of the society, and the certificate given him was forfeited.

Judgment was rendered for the plaintiff for $4,416.10, debt, and $264.96 damages.

The defendant appealed. The other facts material to an understanding of the decision sufficiently appear in the opinion.

31 — 86TH ILL.

Mr. GEORGE O. IDE, for the appellant.

Messrs. BARNES & MUIR and Mr. W. C. SIMPSON, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

It is unnecessary to notice the question of variance, discussed, between the pleadings and evidence, since we are satisfied the judgment below is wrong, irrespective of that question. A by-law of appellant that was in force when Baldwin presented his application to become a member of the society, and which has, without substantial change, remained in force ever since, is as follows:

" Sec. 1. Upon the death of a member of the society, the secretary shall send by mail, to the postoffice address of each member of the society, a notice, giving the name of the deceased member, and the lodge or other Masonic body to which he belonged, and the assessment due from each member to whom such notice is sent; or the secretary may employ a suitable person, a Mason and a member of the society, in each town or city where the members reside, who shall act for the secretary in serving such notices, either personally or by mail; which notice so sent or served shall be deemed and taken to be a lawful and sufficient notice for the payment of the assessment so called for and required, and any member failing to pay such assessment within ten days after such notice has been served upon him shall forfeit his membership in the society and all benefits therefrom.

" Sec. 2. Any member having forfeited his membership by failing to pay such assessment may make application in writing to the Board of Directors of the society, within thirty days after such default was first made, and may, upon the payment of all arrearages, be reinstated to membership by unanimous vote of the Board of Directors."

In Baldwin's application for membership he pledged himself to be bound by all appellant's rules and regula-

tions ; and the certificate of membership issued to him, on which suit is brought, contains this express condition : " And it is also understood and agreed that if the said Albert G. Baldwin shall not pay the assessment hereinbefore named " (that is to say, an assessment provided for in the preceding part of the certificate, and which was and is also required to be paid, by the by-laws, within ten days after due notice served upon him of the death of a member), " on or before the time mentioned for the payment thereof, then this certificate shall be null and void."

The evidence admitted on the trial shows that Baldwin neglected to pay three assessments made on him on account of the deaths of members — notices of which were served on him April 21st to 22d, May 20th to 25th, and June 20th, respectively.

No effort was made to have him restored, after these failures, as provided by the 2d section of the by-law before quoted ; but it is argued, the forfeitures were waived by appellant, and so can not now be urged to defeat a recovery.

The facts relied on as a waiver are these :   After receipts sent by appellant's secretary to its local agent, to be delivered to Baldwin upon his making payment, were returned by the local agent to appellant's secretary, because the amounts were not paid, the secretary again returned them to the local agent for collection ; and in a letter written by the secretary to the local agent, on July 14, 1874, he says : " Inclosed find Bro. Baldwin's receipts.   We can not promise to give him longer time than to the 20th, when the new board intends to meet to appoint officers."   No money was remitted by July 20th, but on August 1st the local agent inclosed the amount to appellant's secretary, requesting it to be returned, if not satisfactory.   This was returned by the secretary, on August 3d, to the local agent, with this explanation :   " By reference to record of Bro. Albert G. Baldwin, I find his name dropped from list of members, in consequence of not having paid assessments.   To be reinstated now, it would require a new application and medical

examination, or, at least, certificate of good health. I return herewith draft as advised. You state the brother is poor, and now out of health. Had I the desire, I have not the authority to do otherwise than to obey the rules of the society.''

The local agent says: " There were three assessments which I say Bro. Baldwin did not pay ; his health was poor ; he was not able to work ; he expressed a desire to pay every time ; Baldwin requested me to advance the money to pay these assessments ; he asked me at one time to try to raise it among the members, and pay his assessments ; Baldwin requested me to raise the money for him some time while I held those receipts ; I raised enough to pay all the assessments made against him, and delivered the receipts ; I commenced to raise that money about July 15, 1874 ; the first day I got the whole of it pledged or contributed.'' He also further says : " I sent the letter just after I collected that money — probably on the same day I collected the last of the money, or the day after I got the last of it ;    *    *    *    I never heard Baldwin ask anybody to raise the money and pay it for him ; he asked me to advance it for him ; I did not do it ;    *    *    *    I collected that money from various parties ; I was then carrying out the request of Baldwin ; I had no request from any other person than Baldwin to collect money in that way ; I delivered the receipts upon the money being paid ; I had no authority from the society to do it.'' He also says there was some talk that upon Baldwin's being reinstated the lodge would carry him, and that Baldwin should not know how the money was raised. He explains that the delivery of the receipts was only to Kidder, to see what the lodge would do about it, and says that he never delivered them to Baldwin. The money, on being returned to him, was refunded to the parties who paid it.

Hazelbacker, one of the parties who contributed the money, says, when he contributed, the party to whom it was given said they were going to try " to raise enough to

reinstate Baldwin, and they would keep their pay out of what the widow got — out of the money drawn by the widow ; that they did not think it would be but a few days before he died.'' He again says after his money had been returned to him Baldwin told him that Barnett had raised the money and sent it to pay what was behind, and that the society would not receive it, and he was thrown out.

Davidson, another party who contributed a part of the money, says : ''At the time I paid the money, the condition was that if it was accepted by the society it was to go to pay up the assessments — to make up the certificate of Mr. Baldwin that had lapsed ; if not, it was to be repaid to me.''

Kidder says he never gave the receipts to Baldwin, or was instructed so to do. `` They were given to me because we raised the money.''

It is plain that, in making the effort to collect this money from Baldwin's friends, the local agent, Barnett, was not acting on behalf of appellant, but on his individual account, endeavoring, as a matter of charity, to render a service to Baldwin. To say that money thus raised and advanced was raised and advanced by Baldwin, is to disregard the facts. It was raised and advanced by his friends, upon the condition that it could be made available to reinstate Baldwin ; and, the condition being impossible, it was returned to those who advanced it. Baldwin did nothing, and assumed no legal liability in the matter.

For the present waiving the question of the authority of appellant's secretary to release Baldwin from his forfeiture and reinstate him, upon what principle can it be said appellant, from the facts before us, waived the right to declare Baldwin's certificate forfeited?

There can be no pretense that there was a contract to that effect, for there was no consideration to support a promise, even if one had been made. The only other ground upon which it might be claimed is that of estoppel. But the indispensable elements of an estoppel are entirely wanting. Baldwin's failure to pay when the assessments

were due was not because of anytaing done or said by any one representing the appellant, but because he was unable to pay. There is not the slightest foundation for assuming that Baldwin's failure to pay, at the time required, is to be attributable to any act or representation of any one claiming to represent the appellant. Had he, subsequently to that time, on the representation of the secretary or agent of the company, paid the money, and the money been accepted, there would be force in saying that, being induced by the act of the appellant to part with his money for the purpose of making the payment, and the appellant having accepted it as a payment, it shall not now be heard to say that it was not a payment. But having paid no money at any time, and having been induced by appellant to do or omit to do no act which he would not otherwise have done or omitted, it is impossible to see upon what rational ground an estoppel can be claimed.

In the *Protection Life Insurance Company* v. *Foote*, 79 Ill. 361, Foote was induced by the secretary of the company to remit his assessment by postoffice money order. But for this direction he would have been bound to make the payment, at all events, within the prescribed time. By following the direction to remit by postoffice money order, he lost the opportunity to make payment in time in any other mode, and it was held the company should not be allowed to take advantage of a default which resulted from following its own instructions. So the case has no analogy to the present. Many of the cases cited by appellee's counsel recognize that a forfeiture may be waived by those who are held out as agents of insurance companies, but we do not consider it necessary to notice them further than to say that in none of them is the doctrine recognized that there is a waiver where there is neither a contract to that end, supported by a sufficient consideration, and having the other essential requisites to a legal contract, nor the necessary elements of a legal estoppel.

The evidence that was introduced in regard to the custom

of appellant to not enforce forfeitures for non-payment at the day, is entitled to no consideration. The witness knew only that in some instances within his knowledge forfeitures were not enforced. He proves neither that it was a uniform custom nor one of any duration. Besides, proof of a custom is never allowed to overcome the express terms of a contract.

Appellee's counsel makes the objection that the evidence does not show a valid assessment against Baldwin. The evidence, consisting of appellant's records, very fully shows valid assessments, notice, etc., in three instances, and the only question is as to its competency. If it is competent, it is sufficient. But the question of competency could only arise on cross-errors assigned on the ground of its improper admission, and no cross-errors are assigned. Moreover, the evidence introduced by appellee, and the admissions of Baldwin, all tend to prove the assessments, and that no objection exists against their validity, and, in the absence of other evidence of a different tendency, should be deemed sufficient.

We think the judgment unauthorized by the evidence, and it must be reversed.

*Judgment reversed.*