ANNIE H. CHAPPLE V. SOVEREIGN CAMP OF WOODMEN OF THE WORLD.

FILED FEBRUARY 19, 1902.   No. 10,716.

Commissioner's opinion, Department No. 3.

1. **Life Insurance:** ASSESSMENT: LIABILITY: NOTICE: BY-LAW: FORFEITURE FOR NON-PAYMENT. Although a by-law of a beneficiary life insurance association requires the clerk of the local body of the order to notify the members of their liability for assessments, his failure so to do will not prevent a forfeiture for non-payment if another by-law expressly provides that such failure shall have that effect.

2. **Assessment:** SUBSTANTIAL COMPLIANCE WITH BY-LAW. Substantial compliance with a by-law of such association, empowering two designated officers of the society to make an assessment on a certain day in each calendar month, and requiring the clerk of a superior branch of the order to immediately give notice of the making of same to the clerks of inferior associations, will be sufficient to uphold the assessment.

3. ———: ABSTRACT EQUITY. An assessment for the precise purpose specified in the by-laws of such an association will not be treated

as invalid solely because it may not appear to be abstractly equitable.

4. **Forfeiture of Membership:** FACT OF DELINQUENCY ITSELF. When the by-laws of such an association expressly declare that the fact of delinquency in payment of an assessment shall work a forfeiture of membership, and that thereafter the delinquent shall not be "entitled to receive the password, or to participate in any of the business or social proceedings of his camp, he may be admitted to a meeting to pay his arrearages, but must retire if he does not pay same," such forfeiture is not waived by the mere fact that the member "was present at all the meetings and participated in all the social proceedings of said camp, up and to the time of his death," which occurred soon after he had become delinquent.

ERROR from the district court for Douglas county. Tried below before DICKINSON, J. *Affirmed*

*Nelson C. Pratt,* for plaintiff in error.

*Brome & Burnett, contra.*

AMES, C.

On or about the 21st day of February, 1895, William H. Chapple, husband of the plaintiff in error, became a member of the defendant association, and of Alpha Camp No. 1, thereof, situated at Omaha, in this state. At the time he received a certificate of membership, providing, in effect, that, if he should die while in good standing as a member, his wife, the plaintiff, should be entitled to participate in the mortuary fund of the association, to the amount of $2,000. This certificate expressly bound the member to whom it was issued, by all the by-laws, rules and regulations of the defendant, and at the time of its issuance the former complied with all the requirements of the society, requisite to make him a member of the same in good standing, and he became such member. Among the objects and powers of the association specified in its by-laws is the creating of "a fund from which, upon reasonable and satisfactory proofs of the death of a member, who has complied with the lawful requirements of the order, there shall be paid a sum not exceeding $3,000, to" his beneficiary.

One of the regulations of the order is that on the 20th day of each month two designated officers of the association "shall determine the number of assessments, if any, necessary to provide for the payment of deaths which may be registered for payment, during the ensuing month, and the sovereign clerk shall immediately mail notice thereof to each camp," whereupon the clerk of the local camp is required to remit the contents of the beneficiary fund to the sovereign clerk. The money thus remitted is required to be used, so far as necessary, for the payment of death losses.

It will be seen from the foregoing that it is not intended that assessments shall be levied for the payment of past or current death losses, but are anticipatory in their nature, and designed to maintain a fund out of which losses shall be paid as they shall be incurred. This fact is mentioned here because we think that it disposes of one of the objections of the plaintiff in error, which is that the assessments, or part of them, in the payment of which Chapple is alleged to be delinquent, were not for the payment of losses occasioned by the deaths of members occurring during his membership. One of the by-laws provides that "the liability of a member to contribute to the payment of death losses shall commence with the date at which his certificate was issued by the sovereign clerk." The first assessment for which it is claimed that Chapple was liable and delinquent was made on or about April 20, which was two months after he became a member. So far as this feature of the matter is concerned, his liability therefor was consequently within the very letter of his contract. In this particular respect, the case is substantially identical with that of *Fulton v. Stevens,* 74 N. W. Rep. [Wis.], 803, and the same rule applies with equal force to the succeeding assessments involved in this litigation.

It is further objected that the first assessment was invalid because of not having been made at the time or in the manner required by the above-mentioned by-law. The two officers who were empowered to make it do not appear

to have been intended to constitute a board or tribunal, but the authority to do this act was lodged in them as individuals, and they were not required to keep or make any record of their action in the premises. One of these officers testified that he was unable to say, positively, whether the assessment was made on the 19th, 20th, or 21st of the month, and it is not certain whether at the time it was made the two men were together; but the witnesses testified that it was their custom always to confer with each other, either by word of mouth, or by letter, telephone or telegram, and that the assessments were made as results of such conferences, and were joint acts of both. We think that the regulation relative to making the assessments is so far directory that a substantial compliance therewith will suffice, and that there was such compliance in this instance. A very similar question was before the supreme court of Minnesota in *Mee v. Bankers' Life Ass'n* (69 Minn., 210, 212), and was disposed of in the following manner: "The first point made by plaintiff's counsel is that the so-called December assessment was invalid for two distinct reasons: (*a*) Because all steps looking toward the assessment were taken prior to a time specifically prescribed by the by-laws; (*b*) because no complete assessment was made by the board of trustees or by its resolution, what was relied on being largely the acts of the secretary or of some clerk under his direction. We do not think it worth while to discuss this point at length. It stood admitted that ten death losses had actually occurred when on November 6, 1893, an assessment being necessary and obligatory upon the association, the board of trustees, by resolution, made and levied the regular December assessment upon all members, to be collected according to the articles of the association. From that time on until the last day of November the secretary and one or more clerks were engaged in preparing, causing to be printed, and in getting ready for mailing the necessary notices of assessment or mortuary calls for over 12,000 members. These notices were dated December 1, and

mailed on the last day of November. The articles provided that all assessments for the payment of death losses should be made by resolution of the board of trustees, and a by-law had been adopted, which read 'until and unless otherwise ordered by the board of trustees, mortuary assessments' shall be made only on the first secular days of April, July, and December in each year, and by special resolution. Although the resolution in question was adopted November 6, it was expressly made for the December assessment. It was necessary for the resolution to be made and adopted prior to the first secular day in December, long enough before, at least, to prepare the notices for mailing, and this is what was done. That the secretary and his clerks performed a large amount of clerical work incident upon the adoption of the resolution is of no consequence whatsoever. The articles and the by-laws were substantially complied with, and the assessment regularly and properly made."

The same principles apply to the notification by the clerk of the sovereign camp to the clerk of the local camp of the fact of such assessments. He is required to make such notification "immediately" by mail. The notices in the case at bar were not sent until the first of the month following that in which they were made. This was pursuant to a custom adopted for the convenience of the person sending them, and does not appear to have been the cause of any loss or inconvenience to anybody else. So slight a variance from a prescribed rule by a mere clerical officer ought not to be held to defeat a previously valid assessment. Concerning the collection of assessments after notice thereof has been received by the clerk of the local camp, there are the following provisions in the by-laws of the association, to which we have given our own numbers: 1. "Every member shall be notified by the clerk whenever an assessment is ordered to be levied, before the 10th day of every calendar month, unless the official notice is ordered, by the sovereign executive council, to be published in an official organ." 2. "Clerks shall notify members of

assessments and dues by sending a notice, by mail, to his last known address, or by leaving it at his usual place of residence or business on or before the 10th day of each month when a payment is to be made." 3. "The failure of the clerk to notify a member of assessments, shall not relieve a member from the payment of assessments or dues, according to the call or requirements of the sovereign camp, and he shall stand suspended for non-payment of same as if he had received actual notice. And it shall be the duty of every member who may not receive a notice from the clerk of the camp for the payment of assessments or dues to inquire of the clerk of the camp, on or before the last day of each month, whether any calls for assessments or dues have been made or liability incurred against him, and if any, he shall pay the same according to the call of the sovereign camp, and by-laws of the camp or vote of same, and upon a failure to do so, shall stand suspended." Undoubtedly all these rules, having relation to the same matter, are to be construed together, and language could hardly be more explicit for rendering the giving of notice merely directory and non-essential than is that of the last of them. It is not contended that Chapple was ignorant of these regulations, or that he was imposed upon or misled in any way with respect to any matter treated of by them; and it would be a waste of time to discuss the evidence as to whether the clerk did notify him, or attempt to do so, or whether, if he sent a notice by mail, it was properly addressed. We think, however, that there is sufficient evidence to uphold a finding that the clerk of the local camp gave the required notices. Another by-law enacts: 4. "On or before the last day of each month each member shall pay the assessments and dues, if any, which may have been levied for the month. A member failing to pay any assessment or dues within the time required by law, shall stand suspended, and shall not thereafter be entitled to any of the benefits of the order, and his certificate shall be canceled and void, and he can not attend any meetings of his camp until he has been duly reinstated in ac-

cordance with the laws of the order." Chapple died on the 9th of June, delinquent of three successive assessments, and his widow, the plaintiff in error, and the beneficiary named in his membership certificate, brought this action to recover thereon. The answer pleaded substantially the foregoing facts, and, as an avoidance of them, the reply contained the following matter, which was upon motion stricken out: "He is not entitled to receive the password or to participate in any of the business or social proceedings of his camp. He may be admitted to a meeting to pay his arrearages, but must retire if he does not pay same. That the said W. H. Chapple was present at all the meetings, and participated in all the social proceedings of said camp, up and to the time of his death." The plaintiff in error contends that the order striking this matter from the reply is erroneous, for the following reasons, as stated in his brief: "The contention of plaintiff in error is that, by the defendant in error permitting W. H. Chapple to attend the meetings of said order, that it thereby waived the payment of the assessments, which assessments were due and unpaid as claimed by the defendant in error, and, granting that such assessments were not paid, that they, by reason of the waiver in permitting the said W. H. Chapple to attend the meetings, he still was in good standing, and his beneficiary entitled to all the rights and privileges under the certificate issued by the defendant in error." In support of this contention the plaintiff in error cites several authorities in which it is held that the clerk of the local camp, who is entrusted with the duty of collecting the assessments, is for that purpose the agent of the superior branch or body of the society for which the service is performed, and that if, in so doing, he adopts a course of business or conduct, upon the sufficiency and propriety of which the members, in good faith, rely, and to which they conform, they or their beneficiaries will not be deprived of the rights and benefits of membership, because of the fact that the course pursued is in violation of the known rules of the order. With the principles of those

decisions we are fully in accord, but they do not seem to us to be applicable to the question at issue in this case. It was the clerk of the local camp, not the camp itself, that was the agent in the premises. No action by the camp was required to suspend the deceased from the right to attend its meetings and participate in its social proceedings. He lost that right instantly by the reason of the fact of delinquency. The failure of the members to resent his intrusion into their meetings, or their forbearance to eject him therefrom and to forbid him to participate with them socially, wrought him no injury, and had no tendency to mislead him. No affirmative act is alleged to have been done either by the clerk or by the camp which had a tendency toward that result. A jury was waived, and the cause tried to the court, who found generally for the defendant, and rendered a judgment of dismissal and for costs. We think he did not err, and it is recommended that the judgment be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment be

AFFIRMED.