NATIONAL COUNCIL KNIGHTS AND LADIES OF SECURITY

*v.*

MARY DILLON.

*Opinion filed October 24, 1904—Rehearing denied December 7, 1904.*

1. BENEFIT SOCIETIES—*lack of power to change contract does not release member's original obligation.* An unauthorized attempt on the part of a benefit society to make a change in a member's contract, of a character detrimental to him, without his consent, does not relieve the member of his obligation to pay as provided in the original contract.

2. SAME—*what not an admission of receipt of dues after member's death.* An offer by a benefit society, after suit begun, to re-pay to the plaintiff the amount of back dues paid to the secretary of the local lodge after the member's death is not an admission that the society had ever received the money, there being no proof as to who made the payment to the local secretary or that he had ever paid it to the defendant.

*K. & L. of Security* v. *Dillon,* 108 Ill. App. 183, reversed.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

A. W. FULTON, for appellant.

EDMUND S. CUMMINGS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In October, 1897, Hanora McCaffrey, mother of Mary Dillon, the appellee, was admitted to membership in Illinois Council No. 420 of the National Council of the Knights and Ladies of Security, a fraternal beneficiary society, the appellant, and a certificate was issued to her for $1000, to be paid, at her death, to appellee. The certificate contained the following: "This certificate is issued upon the express condition that the said member shall in every particular, while a member of the order, comply with all the laws, rules and re-

quirements thereof, and shall, at her death, be a member in good standing of said order," and in her application for membership she agreed to faithfully abide by all the laws, rules and regulations of the society. On the back of the certificate was the number, the name of the member, her age, fifty-two years, the rate of assessment, $1.40, and a synopsis of rates in force, which gave $1.40 as the mortuary assessment at that age. This beneficiary assessment was due on the first of each month and payable on or before the twenty-eighth day of the month without notice, and the laws contained the following provision: "The certificate of each member who has not paid such assessment on or before the twenty-eighth day of each month, shall, by the fact of such non-payment, stand suspended, and no action on the part of the council, or any officer thereof, shall be required as essential to such suspension." There were other dues and assessments which she was required to pay. She died on March 16, 1900, not having paid the February assessment against her. The next day some one paid to the financial secretary of the local council $3.80 for the February assessment and the assessment for the month of March, and the secretary knew that Hanora McCaffrey was then dead. Appellant refused to pay the amount of the certificate, and this suit was brought by appellee in the superior court of Cook county to recover the same. There was no dispute as to Hanora McCaffrey being in default under existing laws, but plaintiff claimed that the laws of the society had been amended and the assessments changed after the certificate was issued, in violation of the contract, and that she was not bound to pay the assessment for February. There was a stipulation that all defenses might be made under the general issue, and upon the trial the court directed the jury to return a verdict for the plaintiff and assess her damages at $1043.24. A verdict was returned accordingly and judgment was entered upon it, which was affirmed by the Appellate Court for the First District.

212—21

The position of plaintiff was, that the certificate and the by-laws in force at the time Hanora McCaffrey became a member of the society constituted a contract between the parties; that her payments to the society could not be increased in amount or the times or conditions of payments changed without her consent, and that such changes had been made which relieved her from the obligation to pay the assessment. When she became a member she was required to pay an assessment of $1.40 for the beneficiary fund, which became due on the first of each month, and a failure to pay any assessment by the twenty-eighth of the month operated as a suspension without notice or any action of the council or any officer of the society, and a member thereby forfeited all rights under a certificate. The laws were amended in 1898, but the amount of said monthly assessments was never changed. When she became a member there were provisions of the society for maintaining a reserve fund and paying the expenses of the National Council and the local council to which she belonged. The certificate provided that for the purpose of maintaining a reserve fund, the National Council should retain $50 out of each $1000 of the certificate, less $1 for each year the certificate should remain in force. She was also required to pay twenty-five cents each quarter for the reserve fund and forty cents each quarter for the expense fund of the National Council for conducting the business of the order and assessments by the local council for the expenses of that council. There was no provision for suspension of a member, without notice, for a failure to pay these assessments for the reserve fund and the expenses of the National and local council. The local council was required to collect the forty cents quarterly for the expense fund of the National Council, which was called a per capita tax, to be remitted to the head office by the subordinate council. Including that quarterly assessment the local council collected $5 per annum in quarterly payments of $1.25 in advance, and the balance above the per capita tax

was used by the council to pay its running expenses.   Under the contract as claimed by the plaintiff she was required to pay for all the assessments for the beneficiary fund, reserve fund and expenses of the local council, $22.80 per year.   In 1898 the National Council changed the plan of collecting the assessments for the reserve fund and expense fund of the National Council from the quarterly to a monthly plan, and increased the expense fund assessment from forty cents quarterly to $2 per year, payable sixteen and two-thirds cents per month.   The reserve fund was left the same as before, but was made payable monthly, at eight and one-third cents per month.   Under the amended laws she paid the same total amount per annum, but the local council received forty cents per year less and the expense fund of the National Council was forty cents more per annum.   As before stated, the assessment for the beneficiary fund was never changed, but the time for the payment of all the assessments was extended to the last day of the month.   This extension of time was beneficial to the members, but the assessments for the expense and reserve fund were payable monthly instead of quarterly, which was unfavorable to the members.  From the time of the adoption of the new laws, on July 1, 1898, until February, 1900, Hanora McCaffrey made payments at the rates and in accordance with the new plan without any objection, and after her death some one gave to the financial secretary of the local council the amount due under the rates fixed by the amended laws.   After the change was made she acquiesced in it, apparently taking the benefit of the extension of time of payment, and never disputed the right of the National Council to make the changes as in violation of her contract.   No objection was made to the change or manner of payment until this suit was commenced.

There is no similarity of this case to that of *Covenant Mutual Life Ass.* v. *Kentner,* 188 Ill. 431, where Mr. Kentner refused to pay the first assessment under the new rule, which was assessment No. 149.   He had paid some in-

creased assessments for the accumulation of a reserve fund held in common for the benefit of all the members, but had never paid or consented to pay any assessment on the new basis for insurance on which No. 149 was levied. Neither is this case at all like that of *Peterson* v. *Gibson,* 191 Ill. 365, where there was no question of consent or acquiescence in the change made in the by-laws or any claim that the contract had been interpreted by the parties or acted upon by them as admitting of any change. The question of the effect of acquiescence, however, is not here decided, for the reason that the evidence showed that Hanora McCaffrey did not comply with her contract under any interpretation of it.

If the society could not increase the assessments for the expenses of the National Council or make those assessments and the assessments for the reserve fund payable monthly, she was still bound to pay according to her contract. The case of *Grand Lodge A. O. U. W.* v. *Bagley,* 164 Ill. 340, is not authority for the proposition that she was not bound to pay anything if she was not required to pay the increased assessment for the expense fund, and does not decide that if a contract cannot be changed to the detriment of one party without his consent he need not comply with it at all. In that case the laws provided that the subordinate lodge should make the assessment, and none was in fact made. In this case the assessment of $1.40 for the beneficiary fund was fixed by the certificate and by-laws when the certificate was issued, and was payable at fixed times and without notice. According to the contract as contended for by plaintiff, if the assessment of $1.40 was not paid before the 28th of February the member would be suspended without notice or any action of the council or any officer of the society, and it was not paid. In the aggregate, the member was not required to pay any more per annum under the amended laws than under the old ones. But even if she was not bound by acquiescence or her voluntary payment of the increased assessments for the expense fund, and could ask for a credit for

such payments, they did not amount to the assessment for February.

It is contended that the condition of the certificate was waived by the defendant by receiving and retaining the $3.80. When this payment was made to the financial secretary of the local council he knew that Hanora McCaffrey was dead, but it is conceded that the rights of the parties could not be affected by the payment to him. It is admitted that he had no right to set aside the rules of the order, and if, from ignorance or any other reason, he received the money, it would not operate to re-instate the member or waive the conditions of the certificate. Under the laws a suspended member could only be re-instated if living, and upon conditions therein specified and upon a majority vote of the local council. There was not even any action of the local council in the matter.

But it is said that the financial secretary forwarded the money to the National Council, which had notice of the death and retained the money, and the defendant is therefore estopped from claiming that the assessment was not paid in time. The secretary testified that he did not know whether he sent the money to the National Council or not, and the only basis in the record for saying that it was sent to the council is, that after the suit was commenced defendant offered to re-pay to appellee the amount paid after the death and tendered the same to her. Who made the payment to whom it could be returned is not shown by the record, and we do not regard the offer to give the money to the plaintiff as an admission that it had been received by the National Council or that it was not still in the hands of the financial secretary of the local council.

The court erred in directing a verdict for the plaintiff.

The judgments of the Appellate Court and the superior court of Cook county are reversed and the cause is remanded to the superior court.

*Reversed and remanded.*