Dillon v. Nat'l Council of the K. and L. of Security, 148 App. 121.

that the load had not been disposed of fully at the time of the accident; and Telfer says that this practice was usual. Sible, of all persons connected with the work being done, was chargeable with knowledge of all things within the very essence of his duties there, and particularly that such condition as that which he alleges caused the injury to himself did not exist.

Under the law and on the evidence we are of the opinion that Sible cannot recover in this case and that the judgment of the Superior Court must be reversed with a finding of fact.

*Reversed with finding of fact.*

Mary Dillon, Appellee, v. The National Council of the Knights and Ladies of Security, Appellant.

Gen. No. 14,491.

1. FRATERNAL BENEFIT SOCIETIES—*what does not waive suspension.* A member who under her certificate of membership and the self-executing by-laws of the society stood suspended at the time of her death for failure to pay an assessment when due, does not become re-instated after her death by the payment by the beneficiary of the delinquent assessment to the society's collecting officer and the acceptance of such payment by such officer with knowledge of her death, such officer not being authorized by the by-laws, directly or indirectly, to waive the suspension. Jones v. Knights of Honor, 236 Ill. 113, distinguished.

2. FRATERNAL BENEFIT SOCIETIES—*what does not excuse prompt payment of assessments.* Evidence of a custom to extend leniency with respect to the payment of assessments is immaterial upon the question of delinquency. '

3. FRATERNAL BENEFIT SOCIETIES—*what does not waive suspension.* If a member at the time of her death by virtue of the self-executing by-laws of the society stands suspended for non-payment of assessments, a waiver of such suspension does not result from requiring the beneficiary to furnish proofs of loss, where neither the certificate nor the by-laws of the society required the furnishing of such proofs.

BAKER, J., dissenting.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed. Opinion filed April 20, 1909. Rehearing denied May 4, 1909; additional opinion filed.

**Statement by the Court.** This action was brought by Mary Dillon, appellee, against appellant in the Superior Court upon a beneficiary certificate issued by appellant to Hanora McCaffery, the mother of Mary Dillon, appellee, in which the benefits were to be paid at death to Mary Dillon. The certificate was dated October 19, 1897. The declaration contains one count and sets out the beneficiary certificate in *haec verba*.

The defendant, appellant here, filed the general issue and four special pleas, which were afterwards withdrawn upon a stipulation that all defenses might be made under the general issue the same as if specially pleaded.

On the trial the court at the close of all the evidence instructed the jury to find for the plaintiff, and to assess the plaintiff's damages at the sum of $1,309.40. The jury returned a verdict in accordance with the instruction. After denying motions for new trial and in arrest of judgment the court entered judgment on the verdict.

The defendant, appellant, is a fraternal beneficiary society with headquarters at Topeka, Kansas. Among its lodges, called in its by-laws and printed matter subordinate councils, was one known as Illinois Council No. 420, located in Chicago. On October 4, 1897, Hanora McCaffery, appellee's mother, made application to Illinois Council No. 420 and a certificate of $1,000 was issued to her October 19, 1897. In the beneficiary certificate it is provided that the certificate "is issued upon the express condition that the said member shall in every particular while a member of the order comply with all the laws, rules and regulations thereof, and shall at her death be a member in good standing of said order."

The 1896 by-laws of the society, in force when the certificate was issued, provided that on "the receipt of the beneficiary certificate one assessment shall be paid by the member to the financial secretary of the council, and on or before the 28th day of each succeeding month, the member shall pay without notice the sum of one assessment to the financial secretary. * * * Upon the failure to pay such assessment on or before the 28th day of the month, the beneficiary certificate of such member shall stand suspended, without notice, and all rights thereunder shall be forfeited. No rights under said certificate shall be restored until it has been duly reinstated by compliance by the member with the laws of reinstatement."

In June 1898, the by-laws of appellant were amended, the amended by-laws going into force July 1, 1898. They were substantially the same as the by-laws of 1896, which were in force when the certificate was issued. The time within which the assessment for each month should be paid was extended from the 28th day of each month to the last day of each month. The amended by-laws bearing upon the questions involved are as follows:

"Before delivering the Beneficiary Certificate, upon the initiation of a member, the Financial Secretary of the Council shall collect one advance assessment from the member, and, thereafter, on or before the last day of each succeeding month, the member shall, without notice, pay the sum of one assessment to the Financial Secretary. * * * The certificate of each member who has not paid such assessment on or before the last day of the month shall, by the fact of such non-payment, stand suspended without notice, and no action on the part of the Council or any officer thereof shall be required as essential to such suspension, and all rights under said certificate shall be forfeited. No right under such certificate shall be restored until it has been duly reinstated by compliance by the member with the Laws of the Order with reference to reinstatement.

124    APPELLATE COURTS OF ILLINOIS.

Dillon v. Nat'l Council of the K. and L. of Security, 148 App. 121.

"On or before the 10th of each month the amount of one assessment for each member of the Subordinate Council who is in good standing, together with such arrearages as may have been paid on suspended certificates, which have been reinstated since the last preceding return, shall be forwarded by the Financial Secretary of the Subordinate Council to the National Secretary. * * *

"Any beneficiary member suspended by reason of non-payment of assessments may be reinstated upon the following conditions and none other, viz.: If living and in as good health as when suspended, and if not engaged in any occupation prohibited by the Laws of the Order, at any time within sixty days from such suspension, by payment to the Financial Secretary of the Council of all arrearages on account of assessments and dues, including the pending assessment and dues. * * *

"Any member whose Beneficiary Certificate has been suspended for a term exceeding sixty days and less than ninety days, must be re-examined by the medical examiner of the Council as upon the original application for a Beneficiary Certificate, and approved by the Medical Director. He may then be reinstated as provided in Section 1 of this Article.

"Any member whose Beneficiary Certificate has been suspended for a period of over ninety days shall stand suspended from all benefits and privileges of the Order, and he shall not again be admitted to membership except as upon original application.

"Any member suspended or expelled from the Order for any cause whatever forfeits all claims to the beneficiary fund during said suspension or expulsion.

"All beneficiary funds collected for reinstatement of suspended members shall be forwarded with the first report thereafter to the National Secretary, by the Financial Secretary of the Council, together with a report of such reinstatement.

"A Subordinate Council is the agent of its members in making applications for membership; admission of members; the collection and transmission of all assessments to the National Council; the serving of all notices are required by the Laws of the Order,

whether they have been adopted by custom of the Sub-ordinate Council or of its officers. The National Council shall not be liable for any negligence in any of these matters nor be bound by any irregularity, neg-lect, or illegal action by a Subordinate Council or by any of its officers.

"The National Council shall not be liable for the il-legal receipt of arrears of Beneficiary or Reserve Fund assessments from suspended members or from those in arrears, and the receiving of any such arrears and re-ceipting therefor by any officer of a Subordinate Coun-cil, and the reinstatement of any suspended member, except as provided in the Laws of the Order, shall not be binding on the National Council."

It appears that the monthly assessments of Hanora McCaffery amounted to $1.90. Of this amount $1.65 belonged to the National Council beneficiary reserve and expense funds and should be forwarded to the Na-tional Council at Topeka, Kansas, in the monthly re-turns required to be sent in each month of the previous month's collections. The amount of twenty-five cents was subordinate council dues, and was placed in the subordinate council's general fund for the pay-ment of its local expenses.

It is not controverted in the record that at the time of her death Hanora McCaffery had not paid the Feb-ruary 1900 assessment, amounting to $1.90, and the March 1900 assessment of the same amount. On March 17, 1900, the day after the death of Hanora McCaffery, the beneficiary, Mary Dillon, appellee, went to the home of Cornelius Ryan, the financial secretary of the subordinate council, and left the amount of the Febru-ary and March assessments with the daughter of Mr. Ryan. Upon Mr. Ryan's return to his home in the evening of that day his daughter gave him the amount left with her. He was at that time informed of the death of Hanora McCaffery.

A few days thereafter Mr. Ryan informed J. M. Bair, the deputy of appellant, having charge of cer-tain branches of the work of appellant in Chicago,

126    APPELLATE COURTS OF ILLINOIS.

Dillon v. Nat'l Council of the K. and L. of Security, 148 App. 121.

that he had received the delinquent assessment in question after the death of Hanora McCaffery, and Bair thereupon immediately notified the national secretary of the facts.

It appears from the testimony of Mary Dillon, appellee, that Bair requested her to get a certificate of death of Hanora McCaffery from the City Hall, so that he might send it to the head office at Topeka, Kansas. Mrs. Dillon expended fifty cents for the certificate. This was the only thing she had to do in making proof of death. She was also asked by Bair to bring in the receipt book and policy of her deceased mother, for the purpose of inspection apparently, as she was told that she could keep them if she would bring them in.

There is some evidence tending to show that Ryan forwarded the February and March assessments to the National Council, and that it retained the same until after this suit was brought. Shortly after the suit was commenced these two assessments, together with costs, were tendered back to the plaintiff.

A. W. FULTON, for appellant.

EDMUND S. CUMMINGS, for appellee.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The first question to be considered is whether Hanora McCaffery, who under the by-laws of appellant and her certificate of membership, stood suspended at the time of her death for failure to pay an assessment when due, could be reinstated after her death by a payment of the delinquent assessment to appellant's collecting officer by the beneficiary in the membership certificate, and the acceptance of such payment by such officer, with knowledge of her death.

By the terms of the beneficiary certificate Mrs. McCaffery agreed to comply with the rules, laws and requirements of the order and should be a member in good standing at her death.

It appears from the record that the assessments made by the National Council upon the members of the society were not levied at such intervals as the officers might deem necessary and direct, or as the mortality experience of the society from time to time might require; but the laws of the society, which were made a part of the contract, provided that there should be an assessment each month, which became due on the first day of the month, and payable on or before the last day of the month, without notice. The substance of the by-laws and their legal effect are stated in National Council v. Dillon, 212 Ill. 320, this case being before that court on an appeal from the first trial.

There is some conflict in the evidence as to whether Cornelius Ryan, financial secretary, remitted to appellant the $3.80 which was paid to him by appellee the day after the death of Hanora McCaffery. His testimony on the first trial, as appears from the opinion of the Supreme Court at page 325, was to the effect that he did not know whether he sent the money to appellant or not. For some reason not explained in the record his memory was much better on this point on the trial now before us. He states positively in this record that he sent the money to headquarters. It appears, however, from his testimony, we think, that he was testifying more to a general conclusion than to a definite fact which he distinctly remembered. His testimony and his reports to the National Council show that he kept his records in such shape that neither he nor the officers of the National Council knew what particular payments he remitted. In his report for December, 1899, he remitted for two members carrying $1,000 at the rate of $1.65, but the report does not inform the officers of appellant for whom this remittance was made. In the next January, 1900, report Ryan remitted for five members holding $1,000 certificates at the rate of $1.65 (Hanora McCaffery's rate), but he does not give on the back

128 APPELLATE COURTS OF ILLINOIS.

Dillon v. Nat'l Council of the K. and L. of Security, 148 App. 121.

of his report in the proper places the names of the members for whom the remittance was made. In his reports for February and March, 1900, he reports for five members at that rate in each report, but the officers of the society could not tell from these reports for whom he was remitting. His attention was called to the matter in a letter dated at Topeka, Kansas, February 8, 1900, and a request made to accompany his February remittance "with a list of the members you pay for". In this condition of Ryan's reports the National Council or its officers could not know whether Ryan had received the February and March assessments from or on account of Hanora McCaffery, or whether he had remitted the amount thereof to the National Council. The evidence shows that Ryan informed Bair, a deputy for the National Council, that Ryan's daughter had received the February and March assessments after Mrs. McCaffery's death, and that Bair notified the National Secretary of that fact. But we do not think that the evidence shows that Ryan remitted these assessments to the National Council, or if he did make such remittance the National Council or its officers had notice or knowledge of it.

Whether, however, the fact of the receipt of the money by Ryan, and his remittance of it to the National Council, as contended by appellee, is material to be considered, depends upon the view taken as to the legal effect of such receipt of the money upon the rights of the parties. In our opinion the receipt of the money by Ryan after the death of Mrs. McCaffery was not within his authority as financial secretary or collector under the contract and the rules of the order, and such receipt of the money did not affect the rights of the parties. In considering the contention of the plaintiff that the condition of the certificate was waived by the defendant, appellant, by receiving and retaining the money, the Supreme Court in National Council v. Dillon, *supra,* said at page 325: "When this payment was made to the financial secretary of

the local council he knew that Hanora McCaffery was dead, but it is conceded that the rights of the parties could not be affected by the payment to him.  It is admitted that he had no right to set aside the rules of the order, and if, from ignorance or any other reason, he received the money, it would not operate to reinstate the member or waive the conditions of the certificate.  Under the laws a suspended member could only be reinstated if living, and upon conditions therein specified and upon a majority vote of the local council.  There was not even any action of the local council in the matter".  See also National Council etc. v. Burch, 126 Ill. App. 15; Miller v. Union Central Life Ins. Co., 110 Ill. 102; Bagley v. Grand Lodge etc., 31 Ill. App. 618; Brown v. Grand Council etc., 81 Iowa 400; Borgraefe v. Knights of Honor, 22 Mo. App. 127.

In Lyon v. Royal Society of Good Fellows, 153 Mass. 83, there was involved the liability of the society on a certificate conditioned that payment should be made at death, provided the member was in good standing when he died. The member stood suspended for non-payment of dues, and thereafter, November 1, 1888, an assessment was levied of which he had notice but did not pay within thirty days.  On December 3, following, the member paid the assessment to the proper officer, but before it was forwarded to the treasurer he was notified that a medical examination was necessary to his reinstatement.  On January 1, another assessment was duly levied, which on January 17, the day before he died, was paid by his wife, the beneficiary named in the certificate, together with the dues, to the financial secretary of the assembly.  These payments were relied on to establish a waiver, and also an estoppel in favor of the plaintiff.  The court said: "The trouble with the plaintiff's case is, that none of the acts relied on were acts of the corporation, but they were all done by officers who had no authority to waive the express provisions of the laws".

130    APPELLATE COURTS OF ILLINOIS.

Dillon v. Nat'l Council of the K. and L. of Security, 148 App. 121.

In Lantz v. Insurance Co., 139 Pa. St. R. 546, it appeared that the premiums falling due in May, August and November 1887, were not paid at maturity, but were paid after maturity, and accepted by the company; that the premium due on February 19, 1888, was not paid at maturity; that on March 2, 1888, a brother of the insured, who was also a policy-holder, called on the general agent of the company in Philadelphia, and informed the latter that Simeon B. Lantz, the insured, would be down on March 6th to pay his premium, and was told that he, the agent, did not make out his monthly report until the tenth of the month, and that if the premium was paid by the ninth it would be all right. Simeon B. Lantz was in good health on March 2nd, but was taken ill the next day and died on March 6th. The court say, at page 560: "The consequence of a default in the payment of the premium is defined in the policy itself. It declares that, if not paid on the days named and in the lifetime of the insured the policy should 'cease and determine'. By this I understand that it is suspended; it ceases to bind the company and to protect the assured, and this without any act or declaration on the part of the former. It does not require a formal forfeiture. The term is often used, and, I think inaccurately in such cases". After citing and analyzing many cases, the court held there could be no recovery on the policy.

Much evidence was offered and admitted on the trial in an attempt to show that leniency had been extended customarily to members and to Mrs. McCaffery in regard to the payment of their assessments. This evidence was immaterial and incompetent. "Proof of a custom is never allowed to overcome the express terms of a contract". Benevolent Society v. Baldwin, 86 Ill. 479, 487; Field v. National Council, etc., 89 N. W. 774.

There is no evidence in the record tending to show that Mrs. McCaffery's failure to pay her assessments

when due was attributable in any way to any act or representation of any one claiming to represent the appellant. And if it be conceded that the evidence shows that the payment of the assessments made by the plaintiff after Mrs. McCaffery's death was sent to the headquarters of the society and held by it until after this suit was brought, under the circumstances disclosed by the evidence it would not afford ground of estoppel against the assertion by appellant of its rights under the terms of the contract. Benevolent Society v. Baldwin, *supra.*

It is further contended on behalf of appellee that appellant after it had full knowledge of the fact that the February, 1900, assessment had not been paid until after the death of Mrs. McCaffery, called upon appellee to furnish certain proofs of the death and to go to certain trouble and expense in regard thereto; and that appellant thereby waived the right to declare the benefit certificate forfeited because of the failure to pay the February assessment within that month.

Neither the benefit certificate nor the by-laws of the order require the beneficiary to furnish such proofs. It was incumbent on the beneficiary merely to report the fact of the death of the member. This was done on March 17, 1900, when plaintiff paid the delinquent assessment to Ryan, and when Ryan in turn reported the fact to Bair, who notified the National Secretary. Bair represented the defendant society in Chicago as organizer of lodges and had something to do with preparing and sending proofs of death to the National Council. Bair stated to plaintiff when she called to see him that he had received proof of death from some source which he deemed insufficient, and requested her to go to the health department of the city and procure a certificate of the death of Mrs. McCaffery. This Mrs. Dillon did and paid fifty cents therefor. It does not appear by what authority she paid any money for it or that it was a lawful or necessary charge. However that may be, it was Bair's duty to make out the

proof and send it in. He had no authority to promise that the claim would be paid or to reject it, or reject the proof of death. The question is whether these facts constituted a waiver on the part of the defendant of the lapse of the certificate and the suspension of Mrs. McCaffery as a member, by reason of the failure of Mrs. McCaffery to pay her assessment according to her contract.

The by-laws of appellant society were self-executing. By the failure of Mrs. McCaffery to pay the February assessment before March 1, 1900, all her rights under the certificate and her membership in the order were suspended *ipso facto*, without any act of any kind by any one else to complete such suspension. National Council etc. v. Burch, *supra;* Field v. National Council etc., 89 N. W. 773.

In the last case cited the Supreme Court of Nebraska say, page 775: "The doctrine of waiver which is often appealed to, to prevent forfeitures in the case of policies of insurance, has no application to the forfeitures of memberships in these orders. The laws and rules governing the different branches of such an order are in the nature of contracts among all the members. In considering the widespread extent of these organizations and the very great extent to which these schemes of benevolence have taken the place of life insurance, especially among the working classes, it is highly important as a principle of public policy that in cases of this kind their rules and regulations should be substantially upheld by the judicial courts. State v. Temperance Benevolent Association, 42 Mo. App. 485; Karcher v. Supreme Lodge, 137 Mass. 368; Hall v. Supreme Lodge, 24 Fed. 450; Rood v. Association, 31 Fed. 62."

To the same effect are Royal League v. Moerschbaecher, 88 Ill. App. 89, affirmed in 188 Ill. 9; Elder v. Grand Lodge, etc., 82 N. W. 987; Supreme Lodge, etc. v. Octers, 28 S. E. 322; and Chapple v. Sovereign Camp, etc., 89 N. W. 423.

In our opinion the certificate of Mrs. McCaffery was as to her a dead certificate prior to and at the time of her death, and the protection of the certificate was suspended. It is true it might have been restored to full vigor prior to her death, and while she was in good health, by the payment of the assessment. But after her death Bair had no authority to restore it to life and vigor by any direct agreement to that effect. What he could not do directly, for want of authority, he could not do indirectly by any act which amounted to a waiver of the default and the consequent suspension of the certificate. There is nothing in the record showing that Bair or any officer of appellant had any authority, express or implied, to waive the default and restore the policy to life and vigor at the time Bair requested the death certificate and appellee procured it. Thompson v. Ins. Company, 104 U. S. 252.

In our opinion the plaintiff, appellee, cannot recover on the certificate and the judgment must be reversed.

*Reversed.*

Mr. Justice BAKER dissenting.

PER CURIAM. By a petition for rehearing our attention is directed to Jones v. Knights of Honor, 236 Ill. 113, which had not been published at the time this case was submitted, and it is urged that it is similar to this case as to the course and practice of the officers of the local lodge in accepting dues and assessments after the time within which they should have received the same, and it is urged that the decision in that case must control the disposition of the case at bar on principle.

The facts as to the practice of the officers of the local lodge in the Jones case in accepting dues after default are similar to the facts here, and we do not attempt to distinguish the cases in that regard. But there is an important and vital distinction between the cases in the provisions of the beneficiary certificates

and the by-laws under which the payments were received. In the Jones case the constitution of the order provided that " a member failing to pay any assessment required by law shall stand suspended, and shall not thereafter be entitled to the benefit * * * until he has been duly reinstated in his subordinate lodge in accordance with the laws of the order". In the case at bar it is provided in the by-laws of the order that no rights of a suspended member under the certificate issued "shall be restored until it has been duly reinstated by compliance by the member with the laws of the order with reference to reinstatement." And it is further provided in the laws of the order that, "Any beneficiary member suspended by reason of non-payment of assessments may be reinstated upon the following conditions and none other, viz.: If living and in as good health as when suspended", etc.

No officer or subordinate lodge had any authority under the by-laws to restore a deceased suspended member to good standing by waiving the default, or to restore the rights under the certificate of such deceased member. Moreover, the officer and subordinate lodges were expressly prohibited from so doing by the by-laws above quoted, if the suspended member be not living. The waiver contended for here to be effectual and restore the rights of the beneficiary under the certificate must be a waiver not only of the default of the deceased, but, of the fact of the death during the default, and also of the express prohibition of the by-law.

The petition for a rehearing is denied.

*Petition for rehearing denied.*


Mr. Justice BAKER dissenting.