Bohumil Routa, Appellee, v. Royal League, Appellant.

Gen. No. 36,763.

Heard in the second division of this court for the first district at the June term, 1933. Opinion filed March 6, 1934. Rehearing denied March 21, 1934.

WEBER, MILLER, DEFFENBAUGH & DONOVAN and AR-
THUR J. DONOVAN, for appellant.

WERNER W. SCHROEDER and LEON LECOUR DROLET,
for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opin-
ion of the court.

Bohumil Routa, plaintiff, brought suit in assumpsit
against the Royal League, a fraternal benefit society,
defendant, to recover an amount alleged to be due
upon a benefit certificate of insurance issued to Josie
Lukes, January 24, 1918, which provided for the pay-
ment of $1,000 to plaintiff upon insured's death while
in good standing in the order. The trial court entered
judgment for the amount of the certificate and inter-
est totaling $1,040, after overruling defendant's de-
murrer to plaintiff's replications to the amended pleas
of defendant and upon the election of defendant to
stand by its demurrer. This appeal followed.

The declaration is in the usual form, setting up the
issuance of the benefit certificate and attaching a copy
thereof as an exhibit, and alleging that Josie Lukes
died February 1, 1931; that notice of her death was
given to defendant; that subsequent to the issuance
of such benefit certificate until the time of her death
insured complied with all the terms, provisions and
conditions of the benefit certificate, as well as the pro-
visions of the constitution and general rules of the
society; that plaintiff was her son and beneficiary and
has at all times since the death of Josie Lukes com-
plied with all the terms and provisions of the benefit
certificate and of the constitution and general rules of
the defendant on his part to be kept and performed;
that Josie Lukes was a member in good standing in
the Royal League at the time of her death; and that
her benefit certificate had not at that time been sur-
rendered or otherwise canceled or annulled, by means

whereof defendant became liable to pay plaintiff $1,000 with interest thereon at five per cent.

Defendant filed four pleas to the declaration and thereafter by leave of court four amended pleas.

The first amended plea was a traverse which, together with the similiter thereto, was withdrawn by agreement of the parties.

The second amended plea is a special plea setting up that the Royal League is a fraternal beneficiary association; that June 13, 1918, Josie Lukes signed an agreement in writing for the purpose of securing membership in defendant society, which was a part of her application and medical examination, in and by which she agreed to be bound by the laws and regulations of the association. It alleged that thereafter on June 24, 1918, she was admitted to membership in Lady Lafayette Council of defendant organization, and in reliance upon her agreement a benefit certificate was issued to her June 29, 1918, for $1,000, payable to Albert Lukes, her husband; that June 23, 1924, she surrendered that benefit certificate and directed that a new one be issued to her payable to Bohumil Routa, her son; and that July 3, 1924, a new benefit certificate was issued to her for $1,000 payable to Bohumil Routa, her son, which provided, among other things:

"This certifies that Josie Lukes . . . has been regularly admitted to membership in said Society as a member of Lady Lafayette Council, and that in accordance with and under and subject to the provisions of its laws, rules and regulations, is entitled to all rights, benefits and privileges of membership therein, and at her death prior to her attaining the age of seventy years, the sum of One Thousand dollars ($1,000) will be paid out of the Widows' and Orphans' Benefit Fund of said Society to Bohumil Routa, beneficiary, bearing relationship to her of son, after satisfactory proof of her death has been made to the Society, together with the surrender of this certificate,

provided, said member is in good standing in the Society at the time of her death, and provided, also, that this certificate shall not have been surrendered or otherwise cancelled or annulled. . . .

"The application for membership and medical examination signed by said member, and this benefit certificate, the articles of incorporation and the laws, rules and regulations of this Society, and all amendments, modifications and additions to each thereof, shall constitute the agreement between this Society and said member."

It further alleged that there was in full force and effect laws of the association which provided that a combined monthly contribution or assessment was due and payable without notice on the first day of each calendar month, and that the failure to pay same on or before the last day of the current month automatically suspended the member from all benefits in the association, and the interest of the beneficiary ceased unless the member was subsequently reinstated; that within 10 days after suspension the member might be reinstated by the payment of the assessment, the failure to pay which resulted in suspension; that any member who had been suspended more than 10 days, but not more than a month, might be reinstated by the payment of all arrearages up to the time of reinstatement; that a member who had been suspended more than one month, but not more than two months, if in good health, might be reinstated by the payment of all arrearages up to the date of reinstatement, such payment to be considered a warranty of the good health of the member at the time of reinstatement and for 30 days thereafter; and that there was no right to reinstatement after a member had been under suspension two months; and if thereafter he desired to renew his membership he must make application as a new member.

This plea also set up other sections of the laws of the association which provided, in substance, that no officer or member of the supreme, advisory or subordinate councils shall have power to modify or waive any of the laws of the association; that the receipt and retention of combined monthly assessments or contributions shall not constitute a waiver of the laws of the association or any defense which might have been availed of had such payment or payments not been received and retained.

It also alleged that Josie Lukes' combined monthly contribution or assessment was $1.22 a month; that the assessment due from her on the first of September, 1930, was not paid by or for her to defendant on or before the last day of September, 1930, and that thereupon she became, was and stood suspended from all benefits in the association and the funds thereof; that she did not, nor did anyone for her, pay her assessment for the month of September, 1930, or any other monthly assessment or money whatever from the time of her suspension up to and including the date of her death, February 1, 1931; and that she did not reinstate herself as provided in the laws of the association at any time prior to her death.

The third amended plea contains all of the allegations set forth in the second amended plea and in addition thereto alleged that three days after the death of Josie Lukes some person, whose identity was unknown to the financial secretary of Lady Lafayette Council, paid that officer $9.12 for and on account of Josie Lukes, but such person did not disclose and the financial secretary did not know, nor did defendant know at that time that the insured had died previous thereto; that thereafter the financial secretary offered to return the $9.12 to plaintiff and tendered same to him but the money and tender were refused; that defendant is ready, willing and able to pay the $9.12 to

plaintiff and will, upon leave of court, pay same to the clerk to be held for his benefit.

The fourth amended plea contains all of the allegations of the third plea and further alleged that when the $9.12 was paid to the financial secretary of Lady Lafayette Council the person who paid it did not disclose to the financial secretary, and she did not know nor did defendant know at that time that Josie Lukes was not in good health or that she had died previous thereto; and that at the time the $9.12 was paid, and prior thereto, Josie Lukes was not in fact in good health but was in fact dead, all of which was not then known to the financial secretary nor to defendant.

Plaintiff replied double to the second, third and fourth amended pleas. No point is made on the filing of the double replications.

The first replication to the second amended plea alleged that plaintiff ought not to be barred from recovery because on February 3, 1931, the Royal League through the agency of the financial secretary of its Lady Lafayette Council, accepted from plaintiff in the name and to the account of Josie Lukes $9.12, issuing at the same time to plaintiff its receipt for that sum; that the $9.12 represented and paid in full the combined monthly assessments and contributions due in accordance with the laws, rules and regulations of the Royal League and its contract with Josie Lukes for September, October, November and December, 1930, and January and February, 1931; that by its act in accepting such combined monthly assessments and contributions defendant waived its laws, rules and regulations, its agreement with the deceased, Josie Lukes, and any and all defenses of which it might have availed itself or upon which it might have relied because of the failure of the insured to make such payment, and especially and particularly its right to declare her suspended from membership in the Royal

League, her benefit certificate forfeited or canceled, or the liability of the Royal League under such benefit certificate terminated.

The second replication to the second amended plea contains the same allegations as the first replication, and in addition thereto it alleged that prior to February 3, 1931, and prior to the death of Josie Lukes, it had been and was the custom and established practice of the Royal League in regard to her and other members of that society of the same status and standing, to accept combined monthly assessments and contributions more than two months in arrears, and that she relied and depended upon this custom and established practice of defendant in delaying until February 3, 1931, the payment of her monthly assessments for September, October, November and December, 1930, and January and February, 1931.

The replications to the third and fourth amended pleas contain the same allegations as the replications to the second amended plea except that they acknowledge the tender of $9.12 and acceptance of same on account.

Defendant contends that the member, Josie Lukes, having defaulted in the payment of the assessment due September 1, 1930, was, *ipso facto,* suspended by the automatic operation of the terms of the contract of insurance on the last day of that month, and that although her contract contained provisions by means of which she could have reinstated herself within the first 10 days, within the first month, or within the first two months after suspension, she did not avail herself of them; that the member died February 1, 1931, without having made an attempt subsequent to her suspension to reinstate herself or to again affiliate herself with the society; that she was not in good standing and her benefit certificate was not in force at the time of her death; and that payment to and acceptance by

the financial secretary of the subordinate council of the $9.12 covering delinquent assessments, after the death of the member, could under no circumstances constitute a waiver by defendant of its rights under the contract and certainly not when the party making the payment did not inform the financial secretary that the member was at that time dead and neither the financial secretary nor defendant knew that the member had died two days before.

Plaintiff's theory is that there had been a custom and practice in the Royal League to accept from Josie Lukes, and other members known to her of the same status and standing in the society, assessments more than two months in arrears, and that she relied and depended on this custom and established practice in delaying the payment of the assessments for September, October, November and December, 1930, and January and February, 1931; that her benefit certificate never lapsed and was never considered by defendant to have lapsed, as was evidenced by its acceptance of six months' delinquent assessments on her account February 3, 1931; that defendant's practice and course of dealing with the insured, and other members known to her, of accepting from them delinquent assessments amounted in law to a waiver of any forfeiture it might otherwise have insisted upon by reason of default in the payment of her assessments; that, in addition to this admitted custom and practice, defendant's acceptance and willingness to accept the delinquent assessments February 3, 1931 (even though insured's death was unknown to it or its financial secretary), was evidence of the fact that the insured was still recognized by the society as a member; that, under such circumstances, defendant is estopped from asserting a forfeiture of the rights of the insured or her beneficiary under her benefit certificate; and that the question presented for determination on this appeal is not

that of claimed reinstatement by reason of the payment of delinquent assessments after the death of the member without notice to the society or its agent of such death, but rather that of estoppel from asserting a forfeiture against a continuing membership with all of its rights under the benefit certificate.

Defendant contends that the doctrine of waiver should not be applied to fraternal benefit societies. To so hold would be to ignore and disregard the established law of Illinois. This question requires no discussion inasmuch as it has been decisively settled by our Supreme Court in a long line of cases. In *Railway Passenger & Freight Conductors' Mut. Aid & Benefit Ass'n v. Tucker*, 157 Ill. 194, the court said at pp. 200, 201:

"It is contended by counsel for appellant, that the doctrine of waiver as above stated applies only to insurance companies having a capital stock and insuring the lives of strangers, and that it has no application to mutual benefit societies, or associations established on the mutual principle. Some cases are referred to which seem to sustain the contention of counsel, but this court is committed to the position that mutual benefit associations are subject to the application of the doctrine of waiver. In *Metropolitan Accident Ass'n v. Windover*, 137 Ill. 417, we held that, where, by the terms of a by-law of a mutual benefit association, failure to pay an assessment within thirty days after notice operated as a forfeiture of membership, such forfeiture might be waived by the association."

In *Dromgold v. Royal Neighbors of America*, 261 Ill. 60, it was held on pp. 64, 65:

"It has been held by this court that the doctrine of waiver applies not only to insurance companies having a capital stock, insuring for pecuniary profit, but also to mutual benefit associations. (*Metropolitan*

*Accident Ass'n v. Windover,* 137 Ill. 417 ; *Railway Conductors' Benefit Ass'n v. Tucker,* 157 id. 194; *Coverdale v. Royal Arcanum,* 193 id. 91; *Illinois Life Ass'n v. Wells,* 200 id. 445.) The nature and objects as well as the organization and government of such associations render the application of general rules of law in most cases the same in mutual benefit associations not organized for pecuniary profit as in insurance societies organized for pecuniary profit. (3 Am. & Eng. Ency. of Law, — 2d ed. — 1044; see, also, Niblack on Benefit Societies and Accident Ins.—2d ed.—sec. 3; 1 Bacon on Benefit Societies and Life Ins.—3d ed.— sec. 23.) No absolute rule can be laid down as to what acts will in all cases amount to a waiver of a forfeiture of membership in a mutual benefit society, but this court held in *Railway Conductors' Benefit Ass'n v. Tucker, supra,* on page 201, that 'conduct on the part of the society which amounts to a recognition of a member's claim to the continuing rights of membership will relieve him from the consequences of his default. The receipt of assessments after default in payment is a common form of waiver.' "

Considerably more than one-third of defendant's exhaustive brief is devoted to the proposition that "there can be no reinstatement of a suspended member after death" and a vast number of cases from this and other jurisdictions are cited to support the argument thereon. A careful examination of plaintiff's declaration and replications fails to reveal any allegation from which the conclusion might be drawn that plaintiff claims that the payment of delinquent assessments after death was effective to bring about the reinstatement of a suspended member and we, therefore, deem it unnecessary to discuss this point.

Defendant urges that "knowledge of the facts is essential to waiver" and that the acceptance by the financial secretary of the subordinate lodge of delin-

quent assessments February 3, 1931, two days after the death of the member without knowledge of such death, could not be held to be legally effective as a waiver of the society's rights to suspend the member, forfeit her membership and terminate defendant's liability on the insured's benefit certificate. This is a correct statement of the law as to waiver. In *Ferrero v. National Council of Knights & Ladies of Security,* 309 Ill. 476, the court enunciated this principle in the following language at p. 481:

"In all cases, however, knowledge of the fact constituting a forfeiture is essential and there is no waiver without such knowledge. A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and the intention to relinquish it. (*Perin v. Parker,* 126 Ill. 201.)"

Plaintiff does not urge that the mere payment after the death of the insured of her delinquent assessments to the financial secretary of the subordinate council, without knowledge on the part of the officer accepting the payment of such death, constituted waiver but he properly asserts that the acceptance of the delinquent assessments by defendant, even after death, should be considered as evidence tending to prove that defendant continued to recognize Josie Lukes as a member, especially where there is other evidence to show that the society considered the membership in force.

In *Illinois Life Ass'n v. Wells,* 200 Ill. 445, where after the death of a policyholder a friend inquired at the office of the insurance company as to the status of the policy, without any reference being made to the insured's death, and was told by the manager and another employee of the insurance company's local office that there were some unpaid premiums and to be safe he should pay them and was asked if he wanted to pay them, it was said at p. 451;

"This evidence, being accepted as true, shows that at that time the company did not consider the policy as having lapsed, and did not intend to declare a forfeiture for the failure to make the payments when they became due. The witness says that he did not tell either Brown or the manager that Wells was dead, but assumed or understood they knew it. Whether they did or not could make no difference as to the competency of this testimony and its legal effect. It was not offered for the purpose of proving any new contractual relations between the insured and the company, but simply for the purpose of showing that the company did not at that time regard the policy as having been forfeited."

In *Jones v. Supreme Lodge Knights of Honor,* 236 Ill. 113, where a check for a delinquent assessment was mailed from a distant city, where the member resided, to the financial recorder of the subordinate lodge in Chicago by a creditor of the deceased member eight days after his death and was received and retained by the recorder without knowledge of such death until some time later when he returned the check, it was held at p. 119:

"The evidence that Sellmeyer sent a check for the February installment after the death of the insured was competent, not for the purpose of proving a new contractual relation between the insured or his beneficiaries and the company, but for the purpose of showing that the company did not at that time regard the policy as having been forfeited. (*Illinois Life Ins. Co. v. Wells,* 230 Ill. 445.)"

It has repeatedly been held by both the Supreme and Appellate Courts of this State that the acts of a benefit society, after the death of a member, may be received in evidence and considered for the purpose of determining whether, at the time of the death, the society considered the benefit certificate in effect and the membership a continuing one.

It is a fundamental principle of law that courts are always reluctant to enforce forfeitures. They are not favored and are never enforced cheerfully and the law will decline to enforce them when they are against equity and good conscience. (*Knights Templars and Masons Life Indemnity Co. v. Vail,* 206 Ill. 404.) Unless circumstances show a clear intention to declare a forfeiture it will not be enforced and courts readily seize hold of any circumstances that indicate an intent to waive. (*Railway Passenger & Freight Conductors' Benefit Ass'n v. Tucker, supra.*)

It is next urged by defendant that no action of an officer or member of a subordinate council can result in a waiver of any rights of the society secured to it by its laws and contract with the holder of its benefit certificate under the following section of its by-laws:

"No officer or member, or number of officers or members of the Supreme Council, any Advisory Council or of any Subordinate Council, shall have any power to modify or waive any of the Laws of the Association, or any requirements thereof, whether the same be now in force or hereafter enacted, and such laws shall be binding on the Association, and each and every member thereof, and on all beneficiaries of members. Neither shall any knowledge or information obtained by, nor notice to any Subordinate Council, or officer or members thereof, or by or to any other person, be held or construed to be knowledge or notice to the Supreme Council, or the officers or members thereof, until such information or notice be presented in writing to the Supreme Scribe.

"The receipt and retention of combined monthly assessments or contributions, dues or special assessments, or any or either of them, shall not, in any case, constitute or effect a waiver of any law or laws of the Association, or any defense which might have been availed of or relied upon by the Association had such

payment or payments not been received and retained, and in any such case the Association shall only be liable for the amount or amounts of such payment or payments so received and retained.''

This contention of lack of authority on the part of representatives of the society to waive forfeiture provisions of its laws is untenable. In construing a similar by-law in *Dromgold v. Royal Neighbors, supra,* the Supreme Court said:

''The application for a benefit certificate and the by-laws of the society are to be considered a part of the contract between the society and the member. (*Enright v. Knights and Ladies of Security,* 253 Ill. 460.) Restrictions upon the power of an agent of an insurance company to waive any of the conditions of the contract or upon the manner of such waiver are themselves conditions of the contract, which may be waived the same as any other condition of the policy.''

In *Zeman v. North American Union,* 263 Ill. 304, on p. 312, the court held:

''The law is well settled in this State that the provisions of the by-laws of mutual benefit societies of this character may be waived by the society; that the local lodge or council of such society is the agent of the supreme lodge, and may waive such by-laws by accepting dues and assessments with full knowledge of all the facts constituting a violation of the rules of the order, or by other acts and conduct of its officers and agents of such a character as to induce a belief on the part of the insured that the society does not intend to exercise its right of forfeiture, but, on the contrary, recognizes the insured as a member of the society in good standing. (*Jones v. Knights of Honor,* 236 Ill. 113; *Grand Lodge A. O. U. W. v. Lachmann,* 199 id. 140.) For this purpose knowledge of facts received or communicated to its officers having authority to act in the premises, and whose duty it is to act in the prem-

ises, is imputed to the society. (*Court of Honor v. Dinger*, 221 Ill. 176; *Walker v. American Order of Foresters*, 162 Ill. App. 30; *O'Brien v. Catholic Order of Foresters*, 172 id. 638.)"

*Waerness v. Independent Order of Foresters*, 244 Ill. App. 211, held at pp. 217, 218:

"The defendant earnestly contends that the local court, and in particular the financial secretary, under the by-laws was wholly without authority to waive any requirement of the by-laws relating to reinstatement. . . . The general rule, however, in this and other States, seems to be that the by-laws of a mutual benefit society, limiting the authority of its local organizations or officers in these respects, are unavailing where such local body or officer has apparent authority. *Independent Order of Foresters v. Schweitzer*, 171 Ill. 325; *Zeman v. North American Union*, 263 Ill. 304; *Dromgold v. Royal Neighbors of America*, 261 Ill. 60."

That the provisions contained in the by-laws, application, benefit certificate or any other portion of the contract of membership in a fraternal benefit insurance society providing for the forfeiture of such membership in certain events may be waived by the society has been settled by a long and uninterrupted line of decisions in this State. In *Chicago Life Ins. Co. v. Warner*, 80 Ill. 410, pp. 412, 413, the court said:

"It is obvious that the provision in the policy, providing for a forfeiture for a non-payment of the annual premium, was incorporated in the contract for the benefit of the insurance company. The policy did not necessarily become void, if the premium was not paid when due. The company had the undoubted right to waive the forfeiture, if it saw proper, and dispense with a prompt payment of the premium at the time it was due.

"If this had been done by the insurance company in this case, then, notwithstanding the contract declares

the policy void if the premium is not paid when due, the company cannot avail of the defense.''

In *Railway Passenger & Freight Conductors' Benefit Ass'n v. Tucker, supra,* it was held on page 200:

''Where a life insurance policy provides for a forfeiture for the non-payment of the annual premium on or before a specified time, such provision is for the benefit of the insurance company, and the company has a right to waive the forfeiture and dispense with a prompt payment of the premium at the time when it is due. Unless the circumstances show a clear intention to declare a forfeiture, it will not be enforced.''

While there is some confusion and conflict among the authorities, the substantial weight of authority in this State supports the position that a fraternal benefit society may be estopped from claiming a forfeiture of membership under its rules, or be held to have waived same because of its custom and established practice of accepting assessments from its members long after the same became delinquent, and long after the policy would otherwise have lapsed under the terms of its contract and laws. In *Chicago Life Ins. Co. v. Warner, supra,* the earliest case we find in this State on the question, the court held on p. 413:

''If the practice of the company, and its course of dealings with the insured, and others known to the insured, has been such as to induce a belief that so much of the contract as provides for a forfeiture in a certain event will not be insisted on, the company will not be allowed to set up such forfeiture, as against one in whom their conduct has induced such belief. May on Insurance, sec. 361.''

The *Tucker* case, *supra,* after stating the rule as just quoted from the *Warner* case, proceeded at p. 201:

''What acts will in all cases amount to a waiver of a forfeiture of membership in a mutual benefit society cannot be definitely stated, but conduct on the part of

the society, which amounts to a recognition of a member's claim to the continuing rights of membership, will relieve him from the consequences of his default. The receipt of assessments after default in payment is a common form of waiver. The question of waiver is in most cases a question of fact for the jury. (16 Am. & Eng. Ency. of Law, page 83.) . . . Where, out of sixty-four payments made by the assured, sixty-three had been made after the time limited by the by-laws had expired, and no conditions were insisted upon for re-instatement, it was held, that such a course of conduct of the company estopped it from insisting upon a forfeiture for non-payment within such time without giving personal notice, that thereafter prompt payment would be required. (*Stylow v. Wisconsin Odd Fellows Mut. Life Ins. Co.*, 69 Wis. 224.)''

The following language was used in *Illinois Life Ass'n v. Wells, supra,* on pp. 454, 455:

''The position of counsel is that, 'even though the time of the payment of the premium was waived, the failure to pay or tender the amount due before the death of the insured is fatal to a recovery.' If this position is tenable, then a general waiver of the terms and conditions of a policy of life insurance would be of little avail to the insured. In other words, if in every case of waiver the insured is bound to make payment before the loss occurs, as argued by counsel, the question of waiver would seldom be one of importance in a suit upon the policy. If payment was actually made, even though not according to the terms of the policy, the company could certainly not thereafter insist upon a forfeiture for a failure to pay promptly.''

The rule that an insurance company or fraternal benefit society will be estopped from insisting on the forfeiture of a policy or benefit certificate, where its established practice or course of dealing induced the

policy holder or member to believe it would not so insist, announced in the *Warner* case, *supra,* and followed in the *Tucker, Wells, Jones, Dromgold* and many other cases of the Supreme and Appellate Courts of this State since its enunciation, was adhered to in the case of *Baxter v. Metropolitan Life Ins. Co.,* 318 Ill. 369, 372, where the following language was used by the court:

"The Appellate Court found that the right of the insurer to insist on the lapse of the policy for failure to pay the premium within the time required had been waived by its conduct. What that conduct was is a question of fact and is not open to review here, but it must be taken as established that the plaintiff in error had at previous times accepted payments on this policy after the thirty-one days of grace had expired. Waiver by an insurer results when it by an act, statement or course of conduct toward the assured recognizes the policy as existing though the time for payment of the premium has expired. Forfeiture of life insurance policies is not favored, and unless the circumstances show a clear intention to claim a forfeiture for non-payment of the premium such forfeiture will not be enforced. If the conduct of the insurer is such as to induce the assured to believe that a forfeiture will not be insisted upon, the insurer will be held to be estopped from taking advantage of such forfeiture. *Bennett v. Union Central Life Ins. Co.,* 203 Ill. 439; *Aetna Life Ins. Co. v. Sanford,* 200 id. 126; *Illinois Life Ass'n v. Wells,* 200 id. 445; *Manufacturers and Merchants Ins. Co. v. Armstrong,* 145 id. 469; *Chicago Life Ins. Co. v. Warner,* 80 id. 410."

In our opinion the cases cited clearly and conclusively establish the law of this State applicable to the determination of the questions presented by this appeal. Defendant, however, strenuously insists that to sustain plaintiff's contention that the association

waived its right to a forfeiture under its contract with Josie Lukes and is estopped by its course of dealing with her, and other members known to her, from asserting or insisting upon such forfeiture, we must overrule the following decisions: *Dillon v. National Council of Knights & Ladies of Security*, 148 Ill. App. 121, 132; *Dillon v. National Council of Knights & Ladies of Security*, 244 Ill. 202, 206; *National Council of Knights & Ladies of Security v. Burch*, 126 Ill. App. 15, 18; *Catholic Order of Foresters v. Lynch*, 126 Ill. App. 439, 458; *Neenan v. National Council of Knights & Ladies of Security*, 188 Ill. App. 490, 493; *Trafton v. National Council of Knights & Ladies of Security*, 198 Ill. App. 347, 349; *Kraus v. National Council of Knights & Ladies of Security*, 198 Ill. App. 345; *Soukup v. Modern Woodmen of America*, 210 Ill. App. 320; *Busta v. Court of Honor*, 172 Ill. App. 71, 75; *Glaspy v. United Brotherhood*, 163 Ill. App. 78, 80. Neither similar facts nor the precise questions of law involved in the case at bar were present in the *Burch, Neenan, Trafton, Kraus, Soukup, Busta* and *Glaspy* cases, enumerated above, and while it is impossible to analyze them here without unduly lengthening this opinion, they are all readily distinguishable from this cause.

In *Dillon v. National Council Knights & Ladies of Security*, 148 Ill. App. 121, *supra,* the court apparently overlooked the leading Illinois cases relating to the issues involved and cited as authority for its conclusions Illinois cases that were clearly inapplicable or cases of other jurisdictions that held directly contrary to the law of this State.

By petition for rehearing the court's attention was directed to *Jones v. Supreme Lodge Knights of Honor,* 236 Ill. 113, *supra,* which had recently been decided by the Supreme Court and had not been considered on the determination of the appeal. The practice of the officers of the local lodges in accepting assessments

after they were in default was admittedly similar in the *Jones* and *Dillon* cases, but the court refused to be influenced or controlled by the *Jones* case, *supra,* declaring in a supplementary opinion that important and vital differences (which we fail to perceive) between the provisions of the benefit certificates and the by-laws in the two cases distinguished them, and that the conclusions reached by the Supreme Court in the *Jones* case could have no application.

The following language, which we deem particularly apt and pertinent to the facts and questions of law as they appeared in the *Dillon* case, was used by the Supreme Court in the *Jones* case, 236 Ill. 113, *supra,* on pp. 117, 118:

"We think there is sufficient evidence in the record to show that the custom, usage and practice of receiving and crediting assessments by the subordinate lodge was sufficient to warrant the jury in finding that prompt payment and the right of forfeiture were waived by appellant, if appellant could be bound by the acts of the officials of subordinate lodges. Whatever the holding in other jurisdictions has been, it is clear that under the decisions in this State the subordinate lodge or council of a fraternal benefit society is the agent of the supreme lodge or council, and that such subordinate lodge may waive forfeiture or suspension upon failure to pay assessments and dues promptly."

In *Dillon v. Knights & Ladies of Security,* 244 Ill. 202, *supra,* the court, in our opinion, did not adhere to the law governing benefit certificates in fraternal organizations as held in a long line of Illinois cases. In distinguishing the *Jones* case we believe the court inadvertently followed the conclusion reached by the Appellate Court that the by-laws of the two associations were so essentially different that none of the conclusions reached in the *Jones* case was applicable.

Where the facts were so similar and substantially the same questions of law were involved, it is difficult to reconcile the prior opinion in the *Jones* case, and the subsequent opinion in the *Dromgold* case, *supra,* with the conclusions reached in the opinion written by the same learned justice in the *Dillon* case.

Defendant refers to *Catholic Order of Foresters v. Lynch,* 126 Ill. App. 439, *supra,* where the facts were very similar to the facts here. In that case the court reached a conclusion directly contrary to that reached by us in this case, but it is sufficient to state that in so doing it failed to be guided by the substantial weight of authority of this State and relied on authorities of other States where different rules of law prevail.

Under the pleadings it is admitted that during the period of more than 12 years that Josie Lukes was a member of defendant association, notwithstanding its self executing laws on suspension of members who failed to pay assessments when due, and notwithstanding its laws prescribing definite methods for the reinstatement of suspended members, and notwithstanding its laws declaring the forfeiture of all rights under their benefit certificates of members who had suffered suspension and failed to reinstate themselves, and in direct contravention of those laws, defendant, customarily, and as a matter of established practice, received and accepted from the insured, and from other members known to her, assessments that were more than two months in arrears. The allegation of the replications (more than two months in arrears) is sufficiently broad to cover delinquencies of three, four, five or six months, or even a year or more.

By reason of its course of dealings with her Josie Lukes was obviously lulled into a feeling of security and the belief that delay in the payment of her assessments would not result in the forfeiture of the rights

of herself and her beneficiary under her benefit certificate and thus preclude plaintiff from realizing the protection the insurance was meant to afford.

We are constrained to hold that her benefit certificate had not lapsed at the time of insured's death, and that the acceptance of her delinquent assessments after her death was significant only as indicating that the society itself did not consider her certificate as having lapsed, but recognized her continuing rights of membership.

Our conclusion is not predicated upon acceptance in isolated instances of past due assessments from the member through the ignorance, negligence or even collusion of an officer of a local council, but upon the established practice of the association itself of accepting such assessments over a period of years. Josie Lukes was fully paid up until September 1, 1930. All delinquent assessments paid by her prior to that date were necessarily received and accepted by the supreme council of the society and credited to her. Therefore, defendant was fully cognizant of the conduct of its subordinate officers. In accepting from her, as is admitted, over a period of years, assessments that were in default for varying terms of more than two months in violation of its own laws, it waived its provisions as to suspension, reinstatement and forfeiture and continued to recognize her as a member, notwithstanding nonpayment of her assessments when due, and defendant cannot be heard to say upon her death that her benefit certificate had been forfeited.

A fraternal benefit society will not be permitted to treat a benefit certificate as alive and in full force, and accept the member's money over a period of years in violation of suspension and forfeiture provisions of its contract until death occurs, and then for the first time seek to void the certificate and escape its liability. Neither will such an association be permitted to insist

on the forfeiture of a benefit certificate issued by it for nonpayment of assessments when due, where its course of dealings with the member has led her to believe that the provisions for forfeiture would not be relied upon.

Counsel for defendant calls upon this court to protect what they seem to consider the almost sacred rights and privileges of fraternal benefit societies. We are invoked to hold that the doctrine of waiver does not apply to such associations in spite of the fact that the clearly established law of this State holds to the contrary. Then in an apparent spirit of concession we are asked, in the event that we do not feel impelled to disregard the law on the subject of waiver or estoppel as applicable to fraternal insurance organizations, that we do not by the determination of this appeal, extend such law.

We fully appreciate the nature and character of fraternal benefit associations and the purpose they serve in the community and the nation, but we are also mindful of the rights of the members of such organizations and their beneficiaries for whom the benefits and protection of the insurance was intended. As a matter of right, justice and good morals, courts at all times should and do protect such beneficiaries against forfeitures unjustified under the facts and the law.

It is a matter of common knowledge that, even prior to but especially since the advent of the depression, fraternal insurance associations, with few exceptions, have carried members for long periods without payment of their assessments in disregard and in violation of their laws and regulations, in the hope that they would sooner or later pay, and have accepted from them the payment of long overdue assessments without insistence on suspension, reinstatement or forfeiture of their rights and benefits. That such societies did not care to lose a large portion of their member-

ship during these trying times, through lapsed benefit certificates, was obviously the reason for their failure to insist on strict compliance with their contracts and laws.

The blame for this condition of affairs cannot justly be placed on subordinate councils or their officers, but squarely attaches to the association itself. It is within its power to change the situation almost over night if it cares to. All that is necessary is the discontinuance of the practice and custom of receiving delinquent assessments in violation of its rules and regulations, the strict observance of its own laws and notice to its members that prompt payment of assessments as provided by their contracts of insurance and the laws of the society will be insisted upon.

For the reasons indicated the judgment of the superior court is affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.