Pearl Gregory Blair, Appellee, v. Modern Woodmen of America, Appellant.

Gen. No. 8,874.

Opinion filed October 10, 1935.

GEORGE G. PERRIN and GEORGE H. McDONALD, both of Rock Island, and FUNK & McKEENE, of Winchester, for appellant.

S. H. CUMMINS, of Springfield, and C. C. CARTER, of Winchester, for appellee.

Mr. Justice Allaben delivered the opinion of the court.

This suit was an action in assumpsit to recover $2,000 upon a fraternal benefit certificate issued by the appellant society to Ernest H. Gregory, and payable, in the event of his death, to Pearl Gregory, now Pearl Gregory Blair, the appellee. Upon the first trial, a verdict was rendered for the appellee, Blair, in the sum of $2,133.33, and on a motion for a new trial, the verdict was set aside. Upon the second trial, the jury found for the appellant society and a motion for new trial was made by appellee, Blair, and withdrawn, and a motion filed for judgment *non obstante veredicto*. This motion was granted by the court and judgment rendered for the appellee and a writ of error was prosecuted to the Appellate Court by appellant and the judgment was reversed and the cause remanded. (*Modern Woodmen of America v. Blair*, 263 Ill. App. 387.) The cause was then redocketed in the Scott county circuit court. The motion of appellant society for judgment on verdict of the jury was allowed and the motion of appellee, Blair, to renew her motion for new trial was denied. From this judgment a second appeal was taken by the appellee here, and the Appellate Court reversed and remanded the cause on the theory that the appellee was entitled to be heard on her motion for a new trial. (*Blair v. Modern Woodmen of America*, 271 Ill. App. 121.) The cause was again redocketed and on a motion made by the appellee, a new trial was granted which resulted in a judgment for the appellee in the amount of $2,600, from which judgment this appeal is taken.

In her declaration Pearl Gregory Blair, plaintiff, averred the execution on the 17th day of November, A. D., 1927, by the defendant of a benefit certificate for a good and sufficient consideration to Ernest A. Gregory, and delivery of same to him, whereby it was

agreed to pay the plaintiff, then the lawful wife of said Ernest A. Gregory, upon the death of the said Ernest A. Gregory the sum of $2,000 subject to the terms and conditions of said benefit certificate, which said certificate is set out in the declaration *in haec verba.* The declaration further avers that after the death of Ernest A. Gregory she gave notice on June 10, 1928, of said death, furnishing and delivering satisfactory proof thereof; that the said deceased during his lifetime fully complied with all the terms and conditions of said benefit certificate, and that the plaintiff had also complied with all the terms and provisions of said benefit certificate on her part, and claims damages in the sum of $2,000, plus five per cent interest from the time notice and proof of death was furnished to defendant; declaration finally avers refusal of the defendant to pay. To this declaration defendant pleaded first the general issue; second, a first special plea answering the allegations set forth in the declaration; third, a second special plea which admits its existence as a fraternal beneficiary society organized under the State of Illinois, the execution of the contract which is alleged consists of the articles of association and by-laws, application of the decedent, and benefit certificate; further sets up that the decedent was suspended as a member on January 1, 1928, whereby the benefit certificate became null and void and was never legally reinstated so that the contract declared on was not in effect at the time that the death occurred. The third special plea sets up the averments in second special plea and in addition thereto says that after the said Ernest H. Gregory was suspended on January 1, 1928, for failure to pay dues, an attempted reinstatement was made which was null and void because said Ernest H. Gregory was not in sound health at the time said attempted reinstatement was made. To this plaintiff filed a replication. In her replications to the appel-

lant's pleas appellee alleges that the camp clerk, by accepting and receiving delinquent benefit fund assessments and camp dues from Ernest H. Gregory, waived any forfeiture of the said benefit certificate for and on account of the said Ernest H. Gregory not being in sound health at the time said assessments were paid or caused to be paid, and that the conduct of the appellant in requesting proofs of death treated the claim of appellee as a valid and binding demand long after the default. On these issues a trial was had. The only proof that was submitted on behalf of the appellee were five exhibits: the benefit certificate, death proofs on forms of the society, official notice of death directed to the head clerk, evidence from local camp to the board of directors, Modern Woodmen of America of member's death, and camp clerk's receipt to member for the payments made on February 29, 1928.

There was no rebuttal offered by appellee and the question whether or not there was in fact a waiver depends upon the exhibits offered. For brevity we deem it necessary to set forth only those portions of the exhibits referred to that are pertinent to the question of waiver. It appears from the pleadings and the evidence offered thereunder that Ernest H. Gregory became a member of the Modern Woodmen of America in October, 1927, and was issued a $2,000 benefit certificate, with Pearl Gregory Blair, his wife, as beneficiary; that on January 1, 1928, he automatically became suspended on account of failure to pay December, 1927, dues; that he became sick in February, and on February 29, 1928, his brother paid to the camp clerk the delinquent dues; that at that time insured was extremely sick, and died on the same day; that the payments were returned by the clerk on March 1, 1928, and that afterwards proofs of death, and other documents wherein the certificates of the officers of the local camp attached stating that the deceased was "rein-

stated'' were sent to the national camp. The only dispute as shown by the pleadings and the proof is whether the defendant by its acts, the acceptance of the dues, and the certification that the deceased was ''reinstated'' at the time of his death had waived the provision that he could not be reinstated unless he was in sound health. The only proof submitted on behalf of plaintiff was three documents, made up as five exhibits, which showed the issuance of the certificate, the death of the insured, and receipt for the dues. These documents, however, also show the suspension on January 1, 1928; that the illness was not reported to the camp until after death; that the clerk returned the dues on March 1st, and that all of the various forms were delivered to the plaintiff at her request. At the close of the plaintiff's evidence defendant asked for a directed verdict in its favor, on which the court reserved its ruling. Defendant then offered in evidence the original application of the deceased, pass report, showing the suspension of Ernest Gregory on January 1, 1928, and the by-laws, which by reference are incorporated in the certificate; also the testimony of Leo Adams, the clerk who took office in January, 1928, who testified that he was personally not acquainted with Ernest H. Gregory, did not know him from his brother, and that at the time he accepted the dues to reinstate Mr. Gregory he did not know he was not in sound health; that he learned this two or three hours later, and at that time Mr. Gregory was dead; that he returned the amount paid in the attempt to reinstate Mr. Gregory on March 1, 1928, and wrote across the stub of the receipt book, ''Cancelled, March 1, 1928''; that nothing was said to him about the health of Mr. Gregory when the dues were tendered him, nor did he ask anything about it. Dr. C. A. Evans testified that he was called to attend Ernest H. Gregory on February 25, 1928; at that time that he had a fever and

cough; that on the 27th he saw him again and his condition was worse, "pretty sick"; saw him twice on February 28th and there was no improvement; that he saw him again on the 29th, about noon, at which time he was very sick, in a very critical condition, and Dr. Evans stayed until Gregory died on the 29th. With this testimony the defendant rested, and the plaintiff offered nothing in rebuttal. Whereupon the defendant renewed its motion to instruct the jury to find a verdict for the defendant. On this motion the court reserved its ruling, to which ruling the defendant excepted. Plaintiff made a motion for a peremptory instruction in her favor which was denied, and the plaintiff excepted. After these motions were denied the court instructed the jury, and the jury returned a verdict, on June 21, 1934, in the sum of $2,600. On July 6, 1934, the court denied the motions presented by the defendant for a directed verdict, on which it had previously reserved its ruling.

The errors assigned by appellant in this case are: First, that the evidence submitted by appellee was insufficient to establish a waiver of the forfeiture of the certificate of beneficial interest; second, that the court erred in refusing to give to the jury a peremptory instruction offered by appellant at the close of appellee's evidence; and third, that the court erred in refusing to give the jury instructions offered by appellant relative to the elements constituting a waiver, and fatally modified certain other instructions.

The first question to be decided is whether or not the acts of the camp clerk, Leo Adams, in accepting and receipting for the delinquent dues, and in filling out the various forms which were sent to the head camp constituted a waiver of the forfeiture by suspension for nonpayment of dues. We think it is a well settled rule that the camp clerk, as an officer of the subordinate camp, in doing these acts, was acting within the ap-

parent scope of his authority and if he waived the forfeiture, it would be binding upon his principal. (*Independent Order of Foresters v. Schweitzer*, 171 Ill. 325.) It is a general rule that in order to effect a waiver of a forfeiture, there must be a prior knowledge of the forfeiture to be waived because a "waiver" is the intentional relinquishment of a known right and there must be both knowledge of the existence of the right and the intention to relinquish it. This rule is recognized in the case of *Ferrero v. National Council of Knights & Ladies of Security*, 309 Ill. 476, which case arose where assessments were paid to a mutual benefit society after the death of the insured by suicide. The insured committed suicide on April 8th and the dues were paid to the camp council on April 23rd, and this payment was relied upon as a waiver of the forfeiture clause. In this case the court said: "When the payment was made to Emma C. Rauft" (the financier of the local council), "on April 23, 1921, the act of Ferrero which resulted in his death had been committed, but there was no evidence tending to prove that she had any knowledge of the fact, or that, knowing of the cause of forfeiture, she gave the receipt and received payment in recognition of the continued validity of the certificate. Under the evidence and every legitimate inference to be drawn therefrom, the plaintiff was entitled to only the amount paid in as dues."

In *Dromgold v. Royal Neighbors*, 261 Ill. 60, which involved a similar situation, the court said: "If a subordinate lodge, with full knowledge of a fact which would render a certificate void, continues to receive dues from a member, the right to forfeit the certificate on account of that fact is waived"; but in citing this verbiage of the court in the *Ferrero* case, the court said: "In all cases, however, the knowledge of the fact constituting a forfeiture is essential and there is no waiver without such knowledge," citing *Perin v.*

*Parker,* 126 Ill. 201. Likewise, in *Nyman v. Manufacturers & Merchants Life Ass'n,* 262 Ill. 300, a waiver was set up, and the court held that "knowledge is always a necessary element to constitute a waiver, and . . . the burden of proof is upon the party claiming a waiver to prove that the one charged to have waived the right knew of the fact that entitled him to the right and the facts upon which he relies for such waiver." The case of *Trafton v. National Council of Knights & Ladies of Security,* 198 Ill. App. 347, was very similar to the case at bar in that a member had become suspended on August 1, 1913, for the nonpayment of July assessment and dues and subsequently attempted to reinstate though at the time she attempted such reinstatement, she was in poor health. The by-laws of the association provided that reinstatement could not be made unless she was in good health at the time. In the abstract decision of the court in that case, it held: "Where there is evidence that the 'financier' of a fraternal insurance society accepted an assessment which would operate to reinstate decedent in membership in such society providing she was in good health, but there is no evidence that such 'financier' knew that she was not in good health, such acceptance did not operate to reinstate decedent, and there is no liability upon her benefit certificate in such society."

Again, in the case of *Neenan v. National Council of Knights & Ladies of Security,* 188 Ill. App. 490, a member of a fraternal order held a certificate where the by-laws provided for suspension for failure to pay the monthly assessments on or before the last day of the month and provided further for reinstatement within 60 days from the date of said suspension by the payment of the current assessment and local council dues and arrearages of any kind provided he be in good health. The assured was suspended for nonpayment of dues and while in suspension and not in good health,

his back dues were paid to the local council and the payments were taken by the financier without knowledge on his part or that of any officer or agent of the order of the state of health of the assured. Immediately upon learning that the assured was not in good health, the financier of the local lodge returned the amount of the payments. In that case the court in its abstract decision said: "Under a by-law of a benefit society which provides that any member suspended for nonpayment of dues and assessments may be reinstated by payment of all arrearages within sixty days from date of suspension, if he is in good health at the time of reinstatement, a suspended member is not reinstated by the beneficiary causing the arrearages to be paid to the financier of the local lodge while the member was in the last stages of a mortal illness, where the financier accepted such payment without any knowledge of the member's illness, there being also a further provision in the by-law that the receipt and retention of assessments and dues, in case the suspended member is not in good health, shall not have the effect of reinstating him."

In *Busta v. Court of Honor,* 172 Ill. App. 71, the assured, holding a benefit certificate in a fraternal benefit association, was suspended under the by-laws for nonpayment of dues and assessments. Subsequently the delinquent dues were paid; the assured died and suit was brought upon the certificate. The defense was the same as in the instant case; that the payment of the dues of the suspended member was made to the recorder of the subordinate lodge while the member was not in good health and that this, under the by-laws of the society, did not effect a reinstatement to membership. In that case the court said: "If the suspension of the insured became effective on January 31, it is uncontroverted that she was then, and thereafter until her death, in the last stages of a mortal illness, and she

was, therefore, ineligible to reinstatement, and there is no evidence tending to show that the recorder of the District Court or other officers of plaintiff in error had any knowledge that the insured was not in good health when payment of the assessments was made on February 19, 1909.'' In the case at bar, the uncontroverted testimony of Leo Adams, the camp clerk, shows that he had no knowledge of the precarious physical condition of Ernest H. Gregory, the assured, at the time he accepted and issued a receipt for the delinquent assessments.

It is clearly shown by the testimony of Dr. Evans that at the time the assessments were paid, the assured was critically ill and at the point of death. Even certain of the exhibits introduced by appellee are authority for the contention of appellant that the camp clerk did not have knowledge of the condition of health of the insured at the time the assessments were receipted for by him. The official notice of death which was filled out by William Snow, consul of the camp, and the camp clerk, Adams, showing the date on which Ernest Gregory died; the cause of death; the date he joined the local camp; the first assessment paid by him, also contained the following language:

''The last two assessments paid before death, by or for said Neighbor, to the Clerk of said Camp were Assessment No. 1 paid on the 29 day of February, 1928 and Assessment No. 2 paid on the 29 day of February, 1928.

''Our Camp records show that said Neighbor was last suspended on the first day of January, 1928 and that he reinstated on the 29 day of February, 1928.'' Following this appears a certification that the deceased was not engaged in any of the society's prohibited occupations; that the statements contained in the report are certified to be the truth; that the benefit certificate is payable to Pearl Gregory and if the claim is allowed, Pearl Gregory, wife of the deceased, is allowed the

$2,000. The official notice of death referred to by appellee also contains the following statement:

"The facts concerning the death of said Neighbor are as follows: Sickness was of very short duration and was not reported to Camp until after death had occurred."

Plaintiff's Exhibit 5, which is introduced in evidence, and which was evidence from the local camp to the board of directors of M. W. of A., contained the following language, after stating that neighbor Ernest Gregory died on the 29th day of February, 1928, and that the last two instalments were paid by or for him on that date:

"Our Camp records show that Neighbor Ernest H. Gregory was suspended on the 31st day of December, 1927, and that he reinstated on the 29th day of February, 1928. . . . Having examined carefully the financial books of this Camp, and under our Obligations as Woodmen, we hereby report the above facts as being the truth. His Benefit certificate is No. 3472698 and is payable to Pearl Gregory and if claim be allowed, we believe the following named person or persons legally entitled to the pecuniary benefits in the following proportions, to-wit:

"Amount: $2,000. To Whom Payable: Pearl Gregory. Relationship: Wife."

This form, dated June 26, 1928, was signed by William Snow, consul, and Leo Adams, clerk, of the local camp, and their signatures are preceded by a certification that the information contained therein is true. Following the certification of this form was a statement by Leo Adams, clerk of the local camp, reading as follows:

"No 12–1–2 Assessments payed for Neighbor Gregory on same date of his death was refunded March 1st, 1928, soon as possible. His sickness was not reported to camp until after death. Leo Adams, Clk."

According to section 64 of the by-laws of appellant society, which forms a part of the contract, a suspended member may reinstate within 90 days after his suspension for nonpayment of assessments, fines or dues, if in sound health, the said provision reading in part as follows:

"Whenever assessments or dues are paid by or for a suspended member, for the purpose of reinstatement, said member shall, by such payment, be held to warrant that he is in sound health, and not engaged in any prohibitive occupation, and to contract that such assessments or dues, when so paid after his suspension for non-payment, shall be received and retained without waiving any of the provisions of this section, until such time as the Head Clerk or the Board of Directors shall have knowledge that the member was not in sound health when he attempted to reinstate. . . . Provided, however, that the receipt and retention of such payment in case a suspended member is not in sound health . . . shall not reinstate said member, or entitle him, or his beneficiary or beneficiaries to any rights under his Benefit Certificate; and provided, further, that such payment made for the purpose of reinstatement either before or after death, shall not constitute a waiver of any provision of these by-laws."

The uncontroverted testimony of Leo Adams, camp clerk, was that at the time the last two assessments were paid on behalf of Ernest H. Gregory the camp clerk did not know of the insured's precarious physical condition and did not learn of his death until after the assessments had been accepted and a receipt issued therefor and that after having received the assessments and issuing the receipt, the camp clerk learned of the death of Ernest H. Gregory, and on the following day returned the assessments to the mother of the deceased who, according to his testimony, he thought had furnished the money. This we believe shows a

clear intention on the part of the camp clerk upon receiving knowledge of the condition of health of the insured at the time the assessments were paid and his subsequent death on the same day, to declare a forfeiture, contrary to the contention of appellee.

While it is true that the courts of this State have said that the acts of a benefit society, after the death of a member, may be received in evidence and considered for the purpose of determining whether at the time of the death the society considered the benefit certificate in effect and the membership a continuing one (*Routa v. Royal League,* 274 Ill. App. 152) and while it is further true that the courts are always reluctant to enforce forfeitures and that forfeitures are not favored and not enforced cheerfully (*Knights Templars & Masons Life Indemnity Co. v. Vail,* 206 Ill. 404), and that the circumstances must show a clear intention to declare a forfeiture, we believe that in this case the evidence clearly shows that it comes within the rule above stated, that there cannot be a waiver without knowledge of the forfeiture to be waived; that the camp clerk did not know of the condition of the assured at the time he accepted the dues; that his return of the assessments paid clearly shows his intention not to reinstate the suspended member. It has been held that the application for a benefit certificate and the by-laws of the society are to be considered a part of the contract between the society and a member. (*Enright v. National Council of Knights & Ladies of Security,* 253 Ill. 460.)

The by-laws in the case at bar were made a part of the benefit certificate which Ernest Gregory held and they provided that where a member was suspended and tendered dues in order to be reinstated, such a tender constituted a warranty on the part of the member that he was in sound health at the time. We believe, therefore, that when the dues in this case were tendered to

the camp clerk, it constituted a warranty upon the part of the assured that he was in sound health and that the acceptance of the dues without knowledge of his actual physical condition could not effect his reinstatement, especially where there were no circumstances surrounding the transaction except the proofs of death and evidence from the local camp submitted to the head clerk of the order, in which the camp clerk stated that the insured reinstated on the 29th day of February, 1928, and if the claim were allowed, it would be payable to the beneficiary.

We fail to see anything in the exhibits introduced by the appellee that will discharge the burden of proof which is upon her to sustain her allegation of waiver. There is absolutely no evidence in the face of the facts recited that shows any act or conduct of the camp clerk that would induce a belief on the part of the beneficiary that the society did not intend to exercise its right of forfeiture on account of his suspension or that it recognized the insured as a member of the society in good standing, except the bare statement in the formal proofs submitted. There is no intentional relinquishment in this case of a known right to declare a forfeiture. Appellee relies strongly upon the case of *Waerness v. Independent Order of Foresters*, 244 Ill. App. 211. The facts there are different from those in the case at bar, for in that case the local camp clerk, instead of entering a member's suspension when it should have been entered, waited for a period of some months and then wrote the member a letter stating that he would suspend him if the dues were not paid up within 30 days.

The second ground for the assignment of error urged by the appellant is that the trial court erred in failing to give the jury a peremptory instruction in appellant's favor at the close of appellee's case. As pointed out heretofore the only proof submitted by

plaintiff is documentary proof. While the documentary proof shows without question the issuance of the benefit certificate, the forfeiture on January 1, 1928, and the subsequent attempt to reinstate, it does not show that at the time the clerk accepted the money he had knowledge of the lack of sound health of the deceased; in fact, these documents show that the clerk did not have knowledge of the unsoundness of health at that time. These documents further show that the dues received for reinstatement were returned on March 1, 1928, as soon as possible, and that the sickness was not reported to the camp until after death. These documents introduced by plaintiff further provide that wherever there had been a forfeiture and payment for reinstatement, such payment constituted a warranty that the one seeking to be reinstated was in sound health. These documents further show that all of said documents were given to the plaintiff by the defendant at plaintiff's request. In view of the authorities heretofore cited that there can be no waiver without a knowledge of the condition prior to the alleged actual waiver, and there being no testimony of any kind to contradict what these documents say, we are constrained to believe that the trial court should have directed a verdict at the close of plaintiff's case. It is urged by plaintiff that defendant waived this error by proceeding to offer testimony after the court refused to rule on the motion. It renewed its motion at the close of all the evidence, and putting in testimony did not constitute a waiver of the error.

The third assignment of error is in regard to certain instructions given by the court. Section 67 of the Practice Act, Cahill's St. 1933, ch. 110, ¶ 195, provides that all objections to instructions must be made ''before the jury retires from the bar, or within such further time as the trial court may by order allow before the jury retires from the bar, or they will be deemed to

have been waived," and that such objections must be specific. A search of the record does not disclose that any objections, either general or specific, were made to the narrative instruction given by the court, or to any part thereof. It is true that it does appear that two suggestions tendered were refused but no complaint is made on that ground. Therefore, we cannot consider the third error relied upon for reversal.

From a consideration of all of the above we are of the opinion that the evidence does not sustain the position of plaintiff that the deceased was a member in good standing of the defendant organization at the time of his death, or that the defendant had waived the right to question the attempted reinstatement of the deceased. We consider the manifest weight of the evidence to the contrary. Therefore, the judgment of the trial court is set aside, and this cause is reversed and remanded.

*Reversed and remanded.*